UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Damian J. Renzello,          :
          Plaintiff          :
                             :
     v.                      :     File No. 1:05-CV-153
                             :
Michael E. Nelson,           :
          Defendant          :


<u>OPINION AND ORDER</u>

     Plaintiff Damian Renzello brings this action claiming
that the defendant, Michael Nelson, has harmed his business
through "predatory business practices" and violations of
federal law.  Renzello claims to be the inventor of portable
ice rinks and related products.  He initially retained Nelson
to assist with marketing his products on the internet.
Renzello subsequently became unhappy with Nelson's work, and
the relationship was terminated.  Since that time, Nelson has
allegedly been using Renzello's product names and trademarks
on the internet to divert business away from Renzello.  Both
Renzello and Nelson are proceeding *pro se*.

     The complaint alleges several federal statutory
violations.  First, Renzello claims "numerous violations" of
18 U.S.C. § 875(d), a criminal statute pertaining to
threatening interstate communications.  Second, he alleges
"cyberpiracy" in violation of the Lanham Act, 15 U.S.C. §
1125(d).  Third, he claims copyright and trademark
infringement under 17 U.S.C. § 501.  Finally, Renzello alleges

infringement of his "innovative and distinctive" ice rink product under 17 U.S.C. § 1301 et seq.  In addition to the complaint, Renzello has filed multiple motions for injunctive relief.

Nelson has moved to dismiss the complaint on a number of grounds, including but not limited to lack of personal jurisdiction, improper venue, and improper service of process. Nelson has also accused Renzello of lying in his motion to proceed *in forma pauperis*.  Both parties have asked the Court to order a halt to any direct communications between them. Also pending before the Court are several motions, mostly filed by Nelson, directed largely at Court processes and other procedural matters.  A hearing was held on March 14, 2006, at which both parties testified.  After the hearing, Renzello was ordered to supplement the record, and Nelson was permitted to file responsive documents.  The Court barred any other filings until further notice.[1]

Having reviewed the submissions of the parties, and for the reasons set forth below, the Court finds that it has personal jurisdiction over Nelson, and that venue is proper in Vermont.  The Court further finds, based upon the documents submitted, that Renzello did not misrepresent his financial

_____

[1]  The Court initially barred the filing of any further motions in an order dated February 7, 2006.

2

status in his *in forma pauperis* application.  With respect to Renzello's motions for preliminary injunctive relief, those motions are DENIED.  All other pending motions are DENIED. The Court acknowledges Nelson's standing notice of appeal, and the case is STAYED for 45 days.

Factual Background

Renzello claims to be the inventor and marketer of portable ice-skating rinks known as "Porta Rinx."  Renzello also produces and markets related products, such as the "Bambini" and the "Ice Mower" machines that are used for smoothing and maintaining outdoor ice surfaces.  He claims that his mother gave him the idea for the portable ice rink product, and that he has been in the ice rink business for approximately ten years.

Renzello first met Nelson in Barre, Vermont in the mid-1990s.  The parties met again in Vermont in 2002, at which time Renzello offered to hire Nelson to market his product on the internet.  Renzello testified that he paid Nelson $500 per week for part of 2002, and has submitted checks evidencing payments to Nelson in varying amounts commencing in January, 2002.

In 2003, Nelson was living out of state.  Nonetheless, he contacted Renzello and expressed an interest in continuing to work with him.  Renzello agreed, and offered Nelson

commissions of 20% on all sales generated by his marketing
work.  An unsigned copy of the parties' written agreement,
dated October 16, 2003, was submitted at the evidentiary
hearing.

The complaint alleges that "soon thereafter, Defendant
copied from Plaintiff's Web site verbatim – and passed off as
his own words in his own Web site, www.icehockeyrink.net – all
promotional verbiage . . . copying word for word everything
but the 'Porta-Rinx' trade name."  Nelson also allegedly made
"grandiose representations" about the product that were not
true.  In support of his claim, Renzello has attached to the
complaint a three-page printout of the site
"www.icehockeyrink.net" dated October 25, 2003.  The site
makes no reference to "Porta-Rinx" or to Renzello's other
product names, instead referring to the product as "our rinks"
and "our kits."  The site does state that the rink kits are
made to order in Vermont.  The allegedly "grandiose"
statements about the product include promises of lifetime
customer support.

When Renzello saw this site, he e-mailed Nelson and asked
him to market the product appropriately and to include the
product name.  Nelson reportedly told Renzello that the name
did not matter, and at first Renzello asked him to cease his
marketing efforts.  Ultimately, Renzello agreed to continue

4

providing rinks to customers who came to him through Nelson in 2003, but not thereafter.

Renzello claims that Nelson subsequently established websites with domain names that approximated his own name and the names of his products.  The complaint alleges that "[d]efendant also then began actively directing Internet traffic to the Plaintiff's competitors in the portable ice-skating rink market."  Renzello claims that his business has suffered as the result of Nelson's alleged conduct.

Nelson informs the Court that he is no longer marketing Renzello's products, and that he does not own any websites referring to Renzello's name or the names of his products.  Nelson claims that although he was the owner of such sites, he has disabled them at his own expense.  In response to Renzello's claims that he was diverting business to competitors, Nelson contends that in order to recoup his expenses on some of his sites, he placed "contextual advertizing" on those sites in order to generate revenue.  Nelson allegedly continues to own websites with domain names that are related to ice rinks.

Discussion

I.  Personal Jurisdiction and Venue

Nelson's motions to dismiss present issues that must be dealt with before the Court can consider the substance of

5

Renzello's claims.  The first question is whether this Court
has personal jurisdiction over Nelson, who now lives in Las
Vegas, Nevada.  A plaintiff bears the burden of showing that
the Court has personal jurisdiction over the defendant.
Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1025 (2d Cir.
1997); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d
560, 566 (2d Cir. 1996); Tom and Sally's Handmade Chocolates,
Inc. v. Gasworks, Inc., 977 F. Supp. 297, 299 (D. Vt. 1997).
When a case is pre-discovery, the plaintiff satisfies this
burden with "legally sufficient allegations" that present
prima facie evidence of jurisdiction.  Chaiken, 119 F.3d at
1025; Tom and Sally's, 977 F. Supp. at 299.  This showing may
be made through affidavits and supporting material,
"notwithstanding a controverting presentation by the moving
party."  Marine Midland Bank, N.A. v. Miller, 664 F.2d 899,
904 (2d Cir. 1981).  Eventually, personal jurisdiction must be
proven by a preponderance of the evidence, either at an
evidentiary hearing or at trial.  See A.I. Trade Fin., Inc. v.
Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

    To determine whether there is personal jurisdiction over
the defendant, the court makes a two-part inquiry.  Metro.
Life, 84 F.3d at 567.  First, the court reviews the forum
state's long-arm statute.  Bensusan Restaurant Corp. v. King,
126 F.3d 25, 27 (2d Cir. 1997).  If state law supports

jurisdiction, then the court reviews whether such jurisdiction violates due process.  Id.  In Vermont, the long-arm statute allows jurisdiction over defendants "to the full extent permitted by the Due Process Clause."  Metro. Life, 84 F.3d at 567 (quoting Bechard v. Constanzo, 810 F. Supp. 579, 582-83 (D. Vt. 1992)).  Therefore, the inquiry is reduced to one part: whether jurisdiction over the defendant comports with the standards of due process.  Id.

The Due Process analysis for personal jurisdiction also has two parts.  First, the court evaluates whether the defendant has sufficient "minimum contacts" with the forum state.  Id.  Second, if such contacts exist, the court reviews whether jurisdiction based on such contacts is "reasonable under the circumstances of the particular case."  Id.

In order for a defendant to have "minimum contacts" with the forum state, jurisdiction must be based upon "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws."  Sollinger v. Nasco Int'l, Inc., 655 F. Supp. 1385, 1387 (D. Vt. 1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  Jurisdiction based on such action is justified because the defendant "should reasonably anticipate being haled into court there."  Artec Distrib., Inc. v. Video

7

Playback, Inc., 799 F. Supp. 1558, 1560 (D. Vt. 1992) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  Accordingly, jurisdiction usually is not proper unless the defendant "actively initiate[s] contacts in a state," id., or "creates 'continuing obligations' between itself and a Vermont resident."  Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp., 921 F. Supp. 1206, 1209 (D. Vt. 1996) (quoting Burger King, 471 U.S. at 476).  Under Calder v. Jones, 465 U.S. 783, 788 (1984), intentional actions "directed at the plaintiff and having sufficient impact upon it in the forum may give rise to jurisdiction."  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254 (3d Cir. 1998). "Jurisdiction is appropriate when the state has been the 'focal point of the [alleged wrongdoing] and of the harm suffered,' the defendants knew the plaintiff would suffer the 'brunt' of the harm there, and they 'expressly aimed their actions at the state.'"  Real Good Toys, Inc. v. XL Machine Ltd., 163 F. Supp. 2d 421, 424 (D. Vt. 2001) (quoting Chaiken, 119 F.3d at 1029).

     In this case, the business relationship between Nelson and Renzello began in Vermont.  When Nelson moved out of state, he initiated contact with Renzello and the two continued to work together.  Accepting Renzello's allegations as true for purposes of Nelson's motion to dismiss, Nelson

would have known that the "brunt" of the injuries suffered as a result of his conduct would be sustained by Renzello and his business in Vermont.  <u>Chaiken</u>, 119 F.3d at 1029.  In light of these facts, the Court finds that Nelson has had sufficient contacts with Vermont such that the exercise of personal jurisdiction over him is appropriate.  <u>See</u> <u>Real Good Toys, Inc.</u>, 163 F. Supp. 2d at 425.

A court's exercise of jurisdiction over a person must be reasonable, and may not offend "traditional notions of fair play and substantial justice."  <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).  The Supreme Court has held that courts may consider "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several State in furthering fundamental substantive social policies.'" <u>Burger King</u>, 471 U.S. at 477 (quoting <u>Woodson</u>, 444 U.S. at 292).

Appearing in Vermont will impose a burden on Nelson. However, Vermont has an interest in protecting business relationships that are formed here, and in allowing the plaintiff to achieve "convenient and effective relief." Moreover, Vermont has an interest in protecting the

intellectual property rights of its citizens.  See Real Good
Toys, Inc., 163 F. Supp. 2d at 425.  Therefore, at this stage
in this case, Renzello has met his burden of showing that
exercising jurisdiction over Nelson will not "offend
traditional notions of fair play and substantial justice."
Int'l Shoe, 326 U.S. at 316.[2]

Nelson also claims that venue in Vermont is improper, and
that this case should be "removed" to federal court in Nevada.
Renzello brings this case alleging, *inter alia*, copyright
infringement under 17 U.S.C. § 501.  In such a case, venue is
proper "in the district in which the defendant or his agent
resides or may be found."  28 U.S.C. § 1400(a).  "It is
generally held that assessment of venue merges into the
personal jurisdiction analysis, and thus venue is proper
anywhere there is personal jurisdiction."  Real Good Toys,
Inc., 163 F. Supp. 2d at 425 (citations omitted); see also
Microbrightfield, Inc. v. Boehringer, 2006 WL 306489, at *5
(D. Vt. Feb. 8, 2006); Anichini, Inc. v. Campbell, 2005 WL
2464191, at *5-*6 (D. Vt. Oct. 4, 2005).  Since the Court has

---

[2]  The parties' written agreement states that it is
governed by Vermont law.  Nelson claims that this provision
was not the original agreement, and that the parties instead
agreed that their dealings would be governed under Nevada law.
Regardless of the parties' choice of law, such a provision is
not necessarily determinative of personal jurisdiction.  See
New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 28
(2d Cir. 1997); O'Brien v. Okemo Mountain, Inc., 17 F. Supp.
98, 102 n.2 (D. Conn. 1998).

personal jurisdiction over Nelson, venue is proper in Vermont.[3]

II.  *In Forma Pauperis* Application

Nelson also moves to dismiss based upon his allegation that Renzello made false statements in his *in forma pauperis* application.  If the Court were to find that Renzello's claims of poverty were untrue, the Court would be required to dismiss the case.  28 U.S.C. § 1915(e)(2); see Cuoco v. United States Bureau of Prisons, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004); Thomas v. Gen. Motors Acceptance Corp., 233 F.3d 305, 306 (7th Cir. 2002).  At the evidentiary hearing, the Court questioned Renzello about his finances at the time of filing.  Renzello testified that he currently lives with his mother on property owned by his sister.  His business is not profitable, and his bank account was negative at the time of filing his complaint.  At the Court's request, Renzello subsequently submitted tax returns from 2004 and 2005 that support his testimony about his business earnings.  He has also submitted a bank statement dated May 31, 2005, which shows a bank balance of -$898.73.  Renzello filed his complaint in June, 2005.  In light of these

---

[3]  To the extent that Nelson challenges service of process due to the Court denial of his motion to be served pursuant to Fed. R. Civ. P. 4(d), the motion is DENIED. Nelson's motion to dismiss for lack of an *ad damnum clause* in Renzello's *pro se* complaint (Paper 76) is also DENIED.

facts, the Court finds that Renzello qualified for *in forma pauperis* status at the time he filed his complaint.

III.   Renzello's Motions for Injunctive Relief

     Having determined that this case may proceed, the Court now turns to Renzello's motions for injunctive relief.  In his complaint, Renzello requests a preliminary injunction "barring Defendant Nelson from further using in any fashion the names of Porta Rinx or Damian Renzello."  Renzello subsequently filed a motion for a preliminary injunction (Paper 9), claiming that Nelson was contacting third parties and asking them to persuade Renzello to drop his case.  Renzello also reportedly feared for his safety because Nelson had allegedly called a local business to inquire about the make and model of Renzello's motorcycle.  In the motion's prayer for relief, Renzello requested that Nelson be compelled to show cause "why he should not be enjoined from using in any fashion the names of Porta Rinx and Damian J. Renzello on the Internet, and why he should not be barred from contacting Plaintiff, Plaintiff's family and business associates of Plaintiff, many of whom are likely witnesses in this cause."

     On January 20, 2006, Renzello filed another request for injunctive relief (Papers 39 and 40).  This request arose out of the allegation that Renzello was being considered for a reality television show.  When this fact was covered in the

local media, Nelson allegedly sent a mass e-mail claiming that
Renzello was a liar and demanding a retraction.  Consequently,
Renzello expanded his request for injunctive relief to include
a bar on Nelson's contacts with the media insofar as those
contacts refer to Renzello or his products.

After the March 14, 2006 evidentiary hearing, and despite
the Court's order barring any further filings other than those
specifically requested by the Court, Renzello attempted to
file a "renewed" motion for injunctive relief.  In this
motion, Renzello alleges that Nelson is defaming him on the
internet, and again expands his request for relief.  In
addition to a bar on using the names Porta Rinx and Damian J.
Renzello, a bar on contacting Renzello, his family or his
business associates, and a bar on contact with the news media,
Renzello seeks an injunction "barring the Defendant from
disseminating or causing to be disseminated via any Web sites,
'blogs' or anywhere else on the Internet any information about
this case."  Because this motion violated the Court's order,
it has not been docketed.

In response to Renzello's claims, Nelson asserts that he
has "reluctantly" cancelled a series of websites, at his own
expense, and that "he has on this date no website or other
material to the best of his knowledge which lists the
Plaintiff nor the Plaintiff and Defendant's product name

13

'Porta-Rinx,' upon." (Paper 33).[4]  Nelson also explains that current internet searches for Renzello's products may result in "hits" on old websites that have been discontinued, and that he has "expended tremendous resources including without limitation financial loans and time to effectively 'de-optimize' all references; to this end many of the pages Renzello complains of in his filing now contain NOTHING if someone were to click on the page!"

A party seeking a preliminary injunction must show (1) immediate irreparable injury and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardship tipping decidedly towards the movant.  See Fed. Express Corp. v. Fed. Expresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000).  The movant must show that injury is "neither remote or speculative, but actual and imminent."  Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir. 1999).  Because monetary loss may be estimated and compensated, such harm is not considered irreparable harm, Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999), unless the movant can show the monetary loss cannot be compensated, for example,

---

[4]  The Court is not addressing at this time Nelson's claim that he maintains ownership in the Porta Rinx product.

because it will probably result in bankruptcy, <u>Borey v. Nat'l</u> <u>Union Fire Ins. Co.</u>, 934 F.2d 30, 34 (2d Cir. 1991).

In this case, Renzello has not made a showing of irreparable harm.  At the evidentiary hearing, Renzello claimed generally that by advertising his product improperly, and later using websites to promote the products of his competitors, Nelson was threatening the distribution of his Porta Rinx product.  Renzello's motions for preliminary relief provide no evidence of any lost revenues, and do not claim that Nelson's actions are causing harm that will be fatal to his business.

Indeed, Renzello has offered nothing more than speculation about the harm that is allegedly being caused by Nelson.  The first claim in the complaint is that Nelson improperly advertized Renzello's products, and failed to use the product name.  At the evidentiary hearing, Renzello conceded that despite the lack of a product name in the advertizing, all requests for product, and resulting sales proceeds, would continue to come to him.  Therefore, under this claim, it is difficult to discern the precise harm that was caused to Renzello's business.

Renzello's next claims are that Nelson engaged in "cybersquatting" by using his name and the name of his products, and directing internet traffic to his competitors.

Renzello contends that Nelson's actions created "a deleterious impact on the viability of Plaintiff's once-burgeoning business and requiring Plaintiff to devote considerable time and attention to fending off Defendant's poaching of Plaintiff's customers . . . ."  Reading Renzello's allegations liberally, he appears to be claiming that Nelson is responsible for lost sales.  Although Renzello has not offered any evidence of lost sales, such evidence would nonetheless demonstrate monetary harm that could be collected in the event of a judgment in his favor.  Consequently, the harm being alleged by Renzello is not irreparable, and an injunction is not warranted at this time.

Furthermore, the merits of Renzello's claim, as currently set forth in the complaint, are in question.  Renzello's first cause of action is under 18 U.S.C. § 875, a criminal statute pertaining to interstate communications of a threatening nature.  Because this statute applies only to criminal conduct, it does not confer a right of action by private citizens.  See Weiss v. Sawyer, 28 F. Supp. 2d 1221, 1227 (W.D. Okla. 1997).

Renzello's next cause of action is brought under the Lanham Act, 15 U.S.C. § 1125(d), also known as the Anti-Cybersquatting Consumer Protection Act ("ACPA").  The purpose of the ACPA is "to provide clarity in the law for trademark

16

owners by prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks - a practice commonly referred to as 'cybersquatting'." Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 495 (2d Cir. 2000) (citing S.Rep. No. 106-140, at 4).  Specifically, the ACPA was designed to focus on individuals who "'register well-known brand names as Internet domain names in order to extract payment from the rightful owners of the marks, . . . register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site, and target distinctive marks to defraud consumers, including to engage in counterfeiting activities.'"  Lucas Nursery & Landscaping, Inc. v. Grosse, 359 F.3d 806, 809 (6th Cir. 2004) (quoting S.Rep. No. 106-140 at 5-6).  In order to succeed on an ACPA claim, a plaintiff must prove the following elements: (1) the defendant has registered, trafficked in or used a domain name, (2) identical or confusingly similar to a mark owned by the plaintiff, (3) which was distinctive at the time of defendant's registration of the domain name, and (4) the defendant committed such acts with a bad faith intent to profit from plaintiff's mark.  15 U.S.C. §§ 1125(d)(1)(A)(i) and (ii).

Renzello seeks an injunction barring Nelson from using his proper name or the Porta-Rinx name on the internet.  He has submitted exhibits showing that he registered the following tradenames with the State of Vermont: "Porta-Rinx by Mom," "The Bambini," "Porta-Rinx," and "The Ice Mower."[5]  There is no evidence that Renzello has registered his marks with the United States Patent and Trademark Office.  Registered and unregistered marks are each entitled to protection under the Lanham Act.  See Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc., 830 F.2d 1217, 1220 (2d Cir. 1987).

It is undisputed that Nelson used both Porta-Rinx and Renzello's name in domain names.  Nelson claims that these sites' domain names were initially developed as part of his marketing work for Renzello.  Because the names used were identical to Renzello's proper name and product name, the Court need not inquire into whether Nelson used names that were "confusingly similar" to Renzello's marks.  15 U.S.C. §§ 1125(d)(1)(A)(i) and (ii).  In order to show a violation under the Lanham Act, Renzello needs only to demonstrate that the

_____

[5]  Although Renzello's current website states that these names are trademarks of Damian J. Products, LLC, the registration forms do not state that the LLC is the holder of the marks.  Where the documents indicate a name of the entity holding or registering the marks, the name is "Damien Renzello."

marks in question were distinctive, and that Nelson used them in bad faith.  Id.

Renzello has offered no specific argument on either of these points.  With respect to the use of his own name, courts have generally held that personal names are not inherently distinctive.  See, e.g., Abraham Zion Corp. v. Lebow, 761 F.2d 93, 104 (2d Cir. 1985).  Therefore, in order to obtain trademark protection, Renzello's name must have "acquired distinctiveness," which is defined as a "recognition of plaintiff's mark . . . in the marketplace as a designator of plaintiff's goods or services."  Playtex Prods. v. Georgia-Pacific Corp., 390 F.3d 158, 162 (2d Cir. 2004); see also J. Thomas McCarthy, Trademarks and Unfair Competition, § 13.2, at 13-4 (4th ed. 2005).  There is no evidence currently before the Court to suggest that any configuration of Renzello's first, middle and/or last names has meaning in the marketplace, or that his name has "become synonymous in the mind of the public . . . as a word identifying" the portable ice skating rink business.  Pirone v. MacMullen, Inc., 894 F.2d 579, 582-83 (2d Cir. 1991).  Therefore, Renzello has not yet shown a likelihood of success on his claim that Nelson violated his rights under the Lanham Act by using his proper name on the internet.

The term "Porta Rinx" may be a distinctive mark.  For purposes of determining whether a mark is entitled to Lanham Act protections, marks are classified, in ascending order of strength, as "(1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful."  <u>Star Indus. v. Bacardi & Co.</u>, 412 F.3d 373, 384-385 (2d Cir. 2005).  Generic marks are those consisting of words identifying the relevant category of goods or services.  <u>Id.</u> at 385.  Generic marks are not distinctive and thus are not protectable under any circumstances.  <u>Id.</u> Descriptive marks are those consisting of words identifying qualities of the product or services.  <u>Id.</u>  They are not inherently distinctive, but are protectable provided they have acquired "acquired distinctiveness" as discussed above.  <u>Id.</u>

Suggestive marks and arbitrary or fanciful marks are each inherently distinctive.  <u>Id.</u>  Suggestive marks are those that are not directly descriptive, but that do suggest a quality or qualities of the product through the use of imagination, thought and perception.  <u>Id.</u>  Finally, arbitrary or fanciful marks are ones that do not communicate any information about the product either directly or by suggestion.  <u>Id.</u>  Because they are inherently distinctive, suggestive and arbitrary or fanciful marks receive protection under the Lanham Act.

"Porta Rinx" is most likely not generic, as it does not merely identify a category of goods.  It may be descriptive,

although there is no evidence that "Porta Rinx" has acquired meaning in the marketplace sufficient to qualify for "acquired distinctiveness."  It also may be argued that the name is suggestive, since it implies certain qualities of the portable ice rink product.  Nonetheless, the distinction between descriptive and suggestive is based upon the purchasing public's perception of the mark.  See Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, at 344-45 (2d Cir. 1999); Lang v. Ret. Living Publ'g Co., Inc., 949 F.2d 576, 581 (2d Cir. 1991); Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 74 (2d Cir. 1988) ("[I]t is [consumers'] perception that determines whether a mark is descriptive or suggestive.").  Again, Renzello has not offered any evidence on the public's perception of the term "Porta Rinx."  See Lane Capital Mgmt., Inc., 192 F.3d at 344.  Finally, "Porta Rinx" is not arbitrary or fanciful, since it certainly communicates some information about the product.  Therefore, the Court cannot find that "Porta Rinx" is a distinctive name such that Renzello is likely to succeed on the merits of his claim under the Lanham Act.

Even assuming, *arguendo*, that Renzello could demonstrate the distinctiveness of his tradenames, he must further show that Nelson used his name and the names of his products in bad faith.  The ACPA lists nine factors to assist courts in

21

determining whether a person has a bad faith intent to profit from the use of a mark.[6] 15 U.S.C. § 1125(d)(1)(B)(i).  The Court is not limited, however, to considering just the listed factors when making a determination of whether the statutory criteria for bad faith have been met.  <u>Sporty's Farm L.L.C.</u>,

---

[6]   The nine factors enumerated in the ACPA are: (1) the trademark or other intellectual property rights of the person, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (5) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (7) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (8) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (9) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of section 43.  15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX).

202 F.3d at 498.  Rather, the factors are indicia that may be considered along with other facts.  Id.

Renzello claims that Nelson used his name and the names of his products to harm his distribution and promote his competitors.  Nelson insists that after the parties ceased their business relationship, he placed advertizing on some of the sites in order to recoup the money that he had invested in them.  Nelson further claims that, because of Renzello's strenuous objections, he has terminated certain sites and worked to minimize the impact of others.

Turning to the statutory factors for determining bad faith, the extent to which Renzello's marks may be protected under the Lanham Act is discussed above.  Nelson initially used those marks for the bona fide purpose of marketing Renzello's products.  Although Nelson's marketing tactics were a point of contention between the parties, his first uses of hockey rink-related sites were for a legitimate purpose. After the parties' disagreements intensified, however, Nelson allegedly responded to Renzello's "cease-and-desist exhortations . . . by registering numerous Internet domain names closely related to the 'Porta Rinx' trade name" and "directing Internet traffic to the Plaintiff's competitors." There is no allegation that Nelson tried to sell the domain names to Renzello or to a third party, or that Nelson used

23

false information when registering for the various domain names.

While the allegations of Nelson's harmful conduct, particularly the registration of sites after Renzello expressed his desire to terminate the business relationship, are troubling, there is little direct evidence to support these claims.  In a motion for a preliminary injunction, Renzello carries the burden of showing that his claim is likely to have merit.  The Court cannot say, based upon the record before it, that Renzello will be able to demonstrate bad faith sufficient to sustain a claim for Lanham Act violations.

Renzello's third claim for relief is under copyright law, citing 17 U.S.C. § 501.  The Copyright Act of 1976 (the "Act") extends copyright protection to "original works of authorship fixed in any tangible medium of expression" such as "musical works, including any accompanying words."  17 U.S.C. § 102(a).  Section 501 of the Act provides the owner of a copyright with a cause of action for infringement against "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118."  17 U.S.C. § 501(a).  When asserting a claim of copyright infringement, the plaintiff must show "(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work."  <u>Jorgensen</u>

24

v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003) (internal citations omitted).

As the text of the statute suggests, the Copyright Act protects works that are "pictoral, graphic, or sculptural." 17 U.S.C. § 102.  The Act excludes any "useful article," defined as having "an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information."  17 U.S.C. § 101; Chosun Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 327-28 (2d Cir. 2005). As the Second Circuit has explained, "[t]his limitation is in keeping with the notion that functional items are not eligible for the relatively long-term protections of copyright, as opposed to the more temporary rights provided by the Patent Act, 35 U.S.C. § 271 et seq."  Chosun Int'l, Inc., 413 F.3d at 328.

In this case, the products in question are portable ice rinks and related accessories.  Renzello has not explained how or why such utilitarian products would be entitled to copyright protection.  Nor does he claim that Nelson has stolen his designs or produced rinks that are similar to the Porta-Rinx line.  While individual design elements of a useful item may be entitled to copyright protection, id., Renzello has not specified what those design elements might be, or how Nelson has violated any copyright he may have in those

25

elements.  Consequently, the Court finds that Renzello has not
shown a likelihood of success on his Copyright Act claim.

Renzello's final claim for relief is brought pursuant 17
U.S.C. § 1301 *et seq.*, also known as the Vessel Hull Design
Protection Act.  This law provides "copyright protection to
the owners of certain vessel hull designs," and has no
application here.  Maverick Boat Co., Inc. v. Am. Marine
Holdings, Inc., 418 F.3d 1186, 1191 (11th Cir. 2005).
Consequently, Renzello's motions for injunctive relief are
DENIED.

IV.  Remaining Motions

In addition to the above-discussed motions, the parties
have attempted to file numerous motions on a variety of
topics.  Most of these motions have been sent to the Court by
Nelson, including a request for the removal of the Clerk of
Court, a motion for documentation with respect to the Court's
case management system, and a motion seeking reference to a
listing of federal holidays.  Some motions were sent after the
Court barred the parties from any further filings.  Those
motions have not yet been docketed.

With respect to any undocketed motions, Nelson claims
that although the Court entered an order on February 7, 2006
barring any further motions, he did not receive notice of the
order until February 15, 2006.  Therefore, all motions sent by

Nelson prior to February 15, 2006 will now be docketed.[7]
These motions, and all other pending motions, are DENIED.

With respect to all other motions and filings that have,
to date, not been docketed, these items shall now be entered
into the Court's docket.  To the extent that these filings
consist of motions, they are DENIED as violative of the
Court's order.

V.  Nelson's Notice of Appeal

With his responses to Renzello's post-hearing
submissions, Nelson included a cover letter in which he asked

----

[7]     On February 13 (cover letter dated February 8), the
Court received five new filings from Nelson, three of which
were motions.  The first of these motions was entitled "Motion
for Court to Take Judicial Notice per FRE, Change of
Signatures of Plaintiff," claiming that Renzello's signatures
in his pleadings are not identical.  The second motion,
entitled "Motion for Immediate Removal Per FRCP Rule 12b and
Title 28 USC Section 1400," argued that venue in a copyright
action is only proper under 28 U.S.C. § 1400 "in the district
in which the defendant may be found."  The third motion was
entitled "Motion for Inclusion of Evidence and for Ruling of
Paper 22 Motion to Dismiss (Dispositive Motion)" and submits
additional evidence with respect to Renzello's IFP
application.
        With a cover letter dated February 10, 2006, Nelson sent
four additional motions.  The motions included: (1) a motion
for the Court to take judicial notice of the fact that
Renzello's Paper 68/69 was signed on February 3rd and docketed
on February 2nd; (2) an opposition to Renzello's paper 68/69
with a renewed motion for a hearing and injunctive relief; (3)
a motion for a hearing and discovery on the issue of recusal,
as well as a renewed motion to dismiss for insufficient
service of process; and (4) a renewed motion to dismiss
pursuant to Papers 22 and 67,  and a "request for filing of
QUI TAM suit against the Federal US District of Vermont."

the Court to accept his filings "as notification to the Court
of Instant Appeal to the Appeals Court for the Federal Court
of Claims, if an injunction temporary or otherwise is issued,
and/or if the Motion to Dismiss or Remove are not granted.
This notification of appeal should be taken immediately upon
issuance of any order in this cause."  The letter further
states that "this is the Defendant's notice of appeal and
automatic 60 day stay of further proceedings per Title 28,
Section 1295; and/or to the Second Circuit Court of Appeals,
with third party briefs ready for filing."

     As discussed above, the Court is denying Renzello's
motions for injunctive relief, and is asserting personal
jurisdiction over Nelson.  In light of Nelson's March 23, 2006
letter, the Court presumes that Nelson seeks to appeal the
denial of his "Motion to Dismiss or Remove."

     Rule 3(e) of the Federal Rules of Appellate Procedure
requires that "[u]pon filing a notice of appeal, the appellant
must pay the district clerk all required fees."  The Court has
no record of receiving from Nelson either the $455.00 filing
fee or a motion to proceed *in forma pauperis.*  Therefore, the
Clerk of Court shall docket Nelson's March 23, 2006 letter as
a Notice of Appeal once Nelson has submitted the filing fee or
motion to proceed *in forma pauperis*.  Because the Court of
Appeals retains the authority to permit late payment of the

filing fee, the Clerk of Court shall docket the Notice of
Appeal not later than August 10, 2006, regardless of whether
or not Nelson has submitted the filing fee or motion to
proceed *in forma pauperis*. <u>See</u> Fed. R. App. P. 26(b), 3(e)
advisory committee's note.

The next issues are Nelson's claim to an automatic stay
and the venue for his appeal.  Although Nelson asserts that he
is entitled to an automatic stay under 28 U.S.C. § 1295, the
Court is not aware of any such provision in § 1295.  Nor is it
clear that an appeal under § 1295 to the Court of Appeals for
the Federal Circuit is proper in this case.  <u>See</u> 28 U.S.C. §§
1291, 1292, 1294 and 1295(a).  Nelson himself suggests in his
March 23, 2006 letter that his appeal may be to the Second
Circuit.  Therefore, the Court will deem Nelson's instant
appeal is being brought to the Second Circuit, and the Clerk
of Court shall proceed accordingly.  If Nelson wishes to
appeal in a different Court of Appeals, he shall so inform
this Court.

When a defendant moves for stay of a case pending appeal
pursuant to Fed. R. Civ. P. 62(c), a court should consider:
"(1) whether the stay applicant has made a strong showing that
he is likely to succeed on the merits; (2) whether the stay
applicant will be irreparably injured absent a stay; (3)
whether issuance of the stay will substantially injure the

other parties interested in the proceeding; and (4) where the public interest lies."  <u>See</u> <u>Rodriguez ex rel. Rodriguez v. DeBuono</u>, 175 F.3d 227, 234 (2d Cir. 1999) (quoting <u>Hilton v. Braunskill</u>, 481 U.S. 770, 776 (1987)).  Having considered each of these factors in turn, the Court concludes that Nelson has not shown a likelihood of success on appeal.  Nor has he shown that he will be irreparably injured if a stay is not entered.  In fact, Nelson has argued that the longer this case is pending, the greater the harm to his internet business activities.  Renzello also has an interest in prompt resolution of this case given his claims of ongoing harm.

Independent of the power of this court, the Court of Appeals has the power to grant a stay.  <u>See</u> Fed. R. App. P. 8(a)(2).  In light of the appellate court's power, this case is hereby STAYED for 45 days so that Nelson may seek a stay pending appeal at the appellate level.  If a stay longer than 45 days is required, either party may move the Court for an extension of the stay and state the reasons why a longer stay is necessary.

<u>Conclusion</u>

For the reasons set forth above, Nelson's motions to dismiss (Papers 22, 58 and 76) and motion for removal (Paper 35) are DENIED.  Renzello's motions for injunctive relief (Papers 9, 39 and 69) are also DENIED.  All remaining motions

are DENIED.  The Clerk's office shall docket all filings in this case as set forth above.

This case is STAYED for 45 days.  In addition to adhering to the stay period, the parties shall continue to refrain from filing any motions not specifically requested or allowed by the Court until further notice.  The parties shall also refrain from contacting each other unless the purpose of such contact is to provide copies of Court filings or to engage in proper discovery practice pursuant the Federal Rules of Civil Procedure and this Court's Local Rules.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 11th day of July, 2006.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge