U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

# UNITED STATES DISTRICT COURT
## FOR THE 2015 AUG 19 AM 10: 29
## DISTRICT OF VERMONT

BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| Damian J. Renzello | ) | |
| Plaintiff, *pro se* | ) | |
| | ) | |
| | ) | |
| v. | ) | File No. 1:05-CV-153 |
| | ) | |
| | ) | |
| Michael E. Nelson | ) | |
| Defendant | ) | |

## PLAINTIFF'S MOTION TO:
## HOLD DEFENDANT IN CONTEMPT;
## SEEK FOR THE COURT TO IMPOSE DAMAGES

"The right of a man to the protection of his own reputation
from unjustified invasion and wrongful hurt reflects no more than our basic
concept of the essential dignity and worth of
every human being --- a concept at the root of any decent system
of ordered liberty."
--- *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990),
quoting *Rosenblatt v. Baer*, 383 U.S. 75, 92 (1966)
(Stewart, J., concurring).


"A lie can travel halfway around the world
while the truth is still putting on its shoes."
--- Mark Twain (1835-1910)


NOW COMES DAMIAN J. RENZELLO, Plaintiff, *pro se*, who files this his
Plaintiff's Motion to Hold Defendant in Contempt and Seek for the Court to
Impose Damages and would show unto the Court as follows:


1) The Court gave both parties proper notice and an opportunity to be heard,
then convened a hearing in this matter in the Brattleboro courtroom on May
7, 2015.

2) Plaintiff attended the May 7th hearing; Defendant did not.

3) Virtually concomitant with the May 7, 2015 hearing, the Defendant in this cause --- having not bothered to heed the court's request for him appear before the Court on the 7th --- nonetheless found the time and the commitment to besmirch Plaintiff further with defamatory and inflammatory comments about Plaintiff on the Internet.

4) Defendant in his defamatory and inflammatory comments about Plaintiff on the Internet used virtually the same language that he has used throughout the course of his ongoing vexation of Plaintiff in a posting (a copy of which is attached hereto as "A") at: http://uscomplaints.com/sports/1061686-porta-rink-portarinks-damien-renzello-john-renzello-frank-renzello-dj-renzello-bambini-porta-rinx-and-bambini-my-buddy-inc-vermont-roof-wash-stole-our-money-total-fraud-renzello-is-also-convicted.html

5) To glean information about the genesis of a Web site, many people turn to a Web site called https://www.whois.net/. Typing into its search engine the name of the Web site "uscomplaints.com" yields the information that the site was created on May 1, 2015, a mere six days before Plaintiff stood before the court to recite yet again the litany of vile defamation that Defendant has for years perpetrated against Plaintiff. (See copy of the search results, attached hereto at "B.")

6) The Court in its order dated May 20, 2015 found that "Defendant Nelson engaged in a pattern of posting online comments concerning Plaintiff Renzello between 2007 and 2013"[1] and that "(b)ased on its review of these comments and the May 7, 2015 hearing, the Court finds these comments have no factual basis and tend to harm Renzello's business."[2]

7) Thus, "Defendant Nelson has violated the Consent Judgment and … the online postings enumerated in the Appendix to this order are defamatory."[3]

---

[1] Order of the Court, May 20, 2015 at 5.
[2] Id.
[3] Id.

8) The Court then ordered Defendant to "cease and desist posting online comments regarding Renzello, (Plaintiff's business) Porta-Rinx or any of Renzello's other products or businesses."[4]

9) The Court warned that "(a)ny future violations of the Court's Order will result in a finding of contempt or damages and punitive damages."[5]

10) In arriving at its Order, the Court relied on the holdings in four Vermont cases,[6] to wit that:

a) "(W)ords may be insulting, abusive, unpleasant and objectionable" without being "defamatory in and of themselves;"[7]
b) A false statement is defamatory "if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him;"[8] and
c) "Statements injurious to one's trade, business or occupation" qualify as slander *per se*.[9]

11) The injurious and slanderous statements that Defendant has repeatedly directed at Plaintiff and Plaintiff's business prove how regrettably true it is: that "the Internet provides for the greatest and quickest dissemination of information ever imagined ... "[10] ; how cyberspace "provides relatively unlimited, low-cost capacity for communication of all kinds ... (in that) (t)hrough the use of chat rooms, any person ... can become a town crier with a voice that resonates farther than it could from any soapbox. Through the

---

[4] Id.
[5] Id.
[6] All four cited in the Order of the Court, May 20, 2015, at 4.
[7] *Blouin v. Anton*, 139 Vt. 618, 621; 431 A. 2d 489, 490 (1981).
[8] *Marcoux-Norton v. Kmart Corp.*, 907 F. Supp. 766, 768 (D. Vt., 1993), quoting *Weisburgh v. Mahady*, 147 Vt. 170, 511 A. 2d 304, 306 (1986).
[9] *Lent v. Huntoon*, 143 Vt. 539, 546; 470 A. 2d 1162, 1168 (1983).
[10] Krasovec, Jay, Comment, *Cyberspace: The Final Frontier, for Regulation?* 31 Akron L. Rev. 101, 124 (1997).
Cited in Quarmby, Ben, *Protection from Online Libel: A discussion and comparison of the legal and extrajudicial recourses available to individual and corporate plaintiffs*, 42 New Eng. L. Rev. 275 at 281 (2007-08)
(The Quarmby article is available online at:
http://www.nesl.edu/userfiles/file/lawreview/Vol42/2-3/Quarmby.%20Final.pdf)

use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer."[11]

12) This is why --- at least at the dawning of the 21st Century --- "some commentators have likened cyberspace to a frontier society free from the conventions and constraints that limit discourse in the real world."[12]

13) Defendant has for years besieged Plaintiff with the kind of cybernetic bombardment described in the 1999 case, *Columbia Ins. Co. v. Seescandy.com* (the difference in the instant case being that it has always been clear that Michael E. Nelson is the tortfeasor):

"With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information. Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from Internet Service Provider (ISP) to ISP, with little or no hope of actually discovering the identity of the tortfeasor."[13]

14) Defendant Nelson's persistent and widespread defamation of Plaintiff on the Internet has served to tear asunder for Plaintiff numerous potentially lucrative deals to sell his portable ice-skating rinks and increase awareness of the Porta-Rinx brand, as the Court acknowledges in the May 2015 order. (See Plaintiff's précis of sundry examples of tortious interference perpetrated by Defendant, a copy of which is attached hereto as "C.")

15) So, too, has Defendant's ceaseless besmirchment of Plaintiff on the Internet without doubt scared away untold potential revenues from business prospects who read Defendant's scurrilous Internet postings and shied from getting in the midst of controversy by doing business with Plaintiff.

16) This demonstrates why "(o)ne should … beware of underestimating the impact of libelous speech on the financial prospects of business entities. The apparent lack of cohesion or structure of the attacks posted online should not

---

[11] *Reno v. ACLU*, 521 U.S. 844, 870 (1997)
[12] Lidsky, Lyrissa Barnett, *Silencing John Doe: Defamation & Discourse in Cyberspace*, 49 Duke L.J. 855, 863 (2000).
(Available online at:
http://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1071&context=dlj)
[13] 185 F.R.D. 573, 578 (N.D. Cal. 1999)

mask the fact that these opinions will have a significant impact on a targeted business. Indeed, online discussion boards focused on financial and business matters are increasingly being relied upon as sources of business information."[14]

17) Indeed, a New Jersey software purveyor bedeviled by an anonymous Internet poster's defamations akin to the Defendant's found that "the information contained in the post (though) unfounded ... caused significant financial harm, not only to its business reputation, but also to its stock price."[15]

18) The sad fact is that today "(i)f "someone posts a defamatory statement somewhere on the Internet, that statement can be instantly read by others, copied and pasted somewhere else on the Internet, and then read by thousands more."[16]

19) The order of this Court dated May 16, 2007 in this cause stipulated (paragraph No. 2): "Plaintiff and Defendant agree *not to interfere* with each other's business interests for the *purpose or intent of causing financial or other harm*."[17] (emphasis added)

20) Further, the order of this Court dated May 16, 2007 in this cause stipulated (paragraph No. 3): "Plaintiff and Defendant agree to a no-contact order with each other and their families including not intentionally contacting them in person or within 100 yards, by phone, by fax, email *or any other form of contact*."[18] (emphasis added)

21) The May 16, 2007 order also states (paragraph No. 4) that "to provide for enforcement of this agreement, a party ... may notify the other of non-compliance by registered mail" and that "*upon a failure to cure the non-compliance, the aggrieved party may seek a hearing before this Court to enforce this agreement*."[19] (emphasis added)

---

[14] Quarmby at 279.

[15] Quarmby at 277, referring to *Dendrite International, Inc. v. John Doe No. 3*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001).

[16] Troiano, Melissa, Comment, *The New Journalism? Why Traditional Defamation Laws Should Apply to Internet Blogs*, 55 Am. U. L. Rev. 1447, 1466 (2006).

[17] Order of the Court, May 16, 2007.

[18] Id.

[19] Id.

22) Plaintiff posits that the Court in effect more than eight years ago drew a "line in the sand," putting Defendant on notice then that he was to cease and desist from the very defamatory practices that he has continued incessantly to conduct against Plaintiff to date.

23) Both the May 7, 2015 hearing and the May 20, 2015 Court Order brought to the Plaintiff elation, however restrained, upon feeling and seeing that the Court is truly "getting it" in terms of fully understanding the magnitude and longevity of the Defendant's cyber-harassment.

24) However, Plaintiff's reading of the Court's May 20, 2015 order suggests that instead of enforcing the 2007 order --- and imposing sanctions and damages after the May 7, 2015 hearing --- the Court has in effect now redrawn the "line in the sand," giving Defendant a second (and undeserved) chance to toe the line and not cross it.

25) Plaintiff submits that Defendant, through his consistent showings of bad faith and outright malicious mendacity through his defamatory comments about Plaintiff all over the Internet, should instead of getting a second "line in the sand" be subject to immediate sanctions and damages.

26) Defendant has repeatedly and egregiously utilized a Court-banished " … form of contact" --- inflammatory and defamatory postings on the Internet that he knew Plaintiff (and Plaintiff's current and potential business clients) would see --- that was specifically and expressly designed solely with the brazen intent "to interfere with (Plaintiff's) business interests for the purpose or intent of causing financial or other harm," in the words of the Court back in 2007.

27) By hailing Defendant into court with Plaintiff's 2014 Motion to Enforce the Court's Agreement and Consent Judgment, Plaintiff reasonably expected that given an ongoing "failure (by Defendant) to cure the non-compliance," Plaintiff as the repeatedly "aggrieved party" would emerge from the May 7, 2015 hearing "before this Court to enforce this agreement" having seen the Court summarily impose: contempt charges; sanctions and costs; damages both compensatory and punitive.

28) This result the Plaintiff now seeks.

29) As the Honorable Court stated from the bench at the outset of the May 7,

2015 hearing, "This is a hearing to enforce the agreement and also the court order that was entered on May 16, 2007."[20]

30) The Court also stated during the May 7, 2015 hearing, "The comments that are being made on the Internet (about Plaintiff by Defendant) are slanderous and untrue."[21]

31) Flatly added the Court from the bench: "Mr. Nelson has violated the agreement and the order."[22]

32) Plaintiff believes that the damages imposed by the Court should include a punitive amount on top of compensatory damages --- as the Court in its May 20, 2015 order warned it might impose[23] --- because Defendant under the yardstick created by *New York Times v. Sullivan* has consistently shown "actual malice" toward Plaintiff and Plaintiff's efforts to earn a livelihood by having full "knowledge" that the statements he has made all over the Internet regarding the Plaintiff are "false or (made) with reckless disregard of whether (they were) false or not."[24]

33) The Honorable Judge Sack, "describing the requirements enumerated in *New York Times v. Sullivan*, explained that the determination of malice should amount to an assessment of whether 'the defendant published a falsehood either knowing it to be false or with a high degree of awareness of its probable falsity, that is, while in fact entertaining serious doubts as to the truth of the publication.' "[25]

34) Or, as the Supreme Court subsequently held in Gertz, giving no haven or refuge under the First Amendment, "there is no constitutional value in false statements of fact."[26]

---

[20] Audiotape of the proceedings, as produced by the Court and given to Plaintiff subsequent to the May 7, 2015 hearing in Brattleboro.
[21] Id.
[22] Id.
[23] Order of the Court, May 20, 2015 at 5.
[24] *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).
[25] Quarmby at 283, citing Sack, Robert D., Sack on Defamation: Libel, Slander and Related Problems (3d. ed., 2007) at § 5.5.2
[26] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974)

WHEREUPON, PREMISES CONSIDERED, PLAINTIFF PRAYS that in light of the court's most recent order, and for the reasons delineated herein, the court ought:

--- to instruct Defendant to take down forthwith the Web site cited in paragraphs 4 and 5, *supra*;

--- to remind Defendant that he must cease and desist forthwith from any further defamation of Plaintiff anywhere on the Internet;

--- to hold Defendant in contempt of court, with the imposition of costs and sanctions, for having already violated the court's 2007 order (and having done so repeatedly and with impunity); and

--- to impose upon Defendant for remuneration to Plaintiff such monetary damages, both compensatory and punitive, as the Court deems mete and proper.

PLAINTIFF HEREUPON signs his hand in East Montpelier, Vermont, on this the __11__ day of August 2015:


Damian J. Renzello
Plaintiff, *pro se*

# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF VERMONT

Damian J. Renzello      )
     Plaintiff, *pro se*      )
                          )
                          )
v.                        )          File No. 1:05-CV-153
                          )
                          )
Michael E. Nelson      )
     Defendant      )

## CERTIFICATE OF SERVICE

NOW COMES Damian J. Renzello of East Montpelier, *pro se*, who files this Certificate of Service and attests that he did serve upon the Defendant his Plaintiff's Motion to Hold Defendant in Contempt and Seek for the Court to Impose Damages (which also seeks two additional actions by the Court), by sending a true copy of same to the Defendant (along with a copy of this certificate of service) via prepaid first-class U.S. mail to:

c/o Leslie M. and Peter E. Nelson
33 Hartford Avenue
Wakefield, R.I. 02879

and

c/o Leslie M. and Peter E. Nelson
69 Iroquois Trail
Cranston, R.I. 02921-2536

Respectfully submitted on this the 12 day of August 2015

Damian J. Renzello
Plaintiff, *pro se*