U.S. DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


DAMIAN J. RENZELLO )
  V             )            Case No.
MICHAEL E. NELSON    )            1:05-cv-00153-jgm



Hearing held before the Honorable J. Garvan Murtha
Held on May 7, 2015
Transcribed from an audio recording



A P P E A R A N C E S:

Damian J. Renzello
Gordon Bock


Clerk:  Kathleen Korstange

CAPITOL COURT REPORTERS, INC.
P.O. BOX 329
BURLINGTON, VERMONT  05402-0329
(802/800) 863-6067
E-MAIL:  info@capitolcourtreporters.com

1          THE CLERK:  All rise.  Please be

2     seated.  This is Docket Number 5-cv-153.  Damian

3     Renzello versus Michael Nelson.  The Plaintiff is

4     present in the courtroom pro se.  And the Defendant

5     does not appear.

6          The matter before the court is a

7     hearing on enforcement of an agreement and consent

8     (inaudible).

9          THE COURT:  Is that you?

10          MR. RENZELLO:  Yes, Your Honor.

11          THE COURT:  So Mr. Renzello, and the

12     gentleman with you is?

13          MR. RENZELLO:  My friend Gordon.  I

14     have requested the court for assistance in helping me

15     get through the case here.

16          THE COURT:  Okay.  As announced, this

17     is a hearing to enforce the agreement and also the

18     court order that was added May 16, 2007.  The court

19     in a previous order required you, Mr. Renzello, to

20     somehow notify Mr. Nelson.  I know that he has not

21     appeared, obviously, but that it's been difficult to

22     determine where he is.

23          But as I understand it, you mailed a

24     notice to his last known address and that letter did

25     not get returned.

1           MR. RENZELLO:  That's correct, Your

2      Honor.

3           THE COURT:  Correct?  So based on that,

4      the court set up this hearing, and again, obviously,

5      Mr. Nelson has not appeared.  So the court is

6      prepared to go ahead with enforcing the order and

7      agreement.  The question is how.

8           And so I'll hear from you or hear from

9      your advisor, if you wish.

10          MR. RENZELLO:  Uh --

11          THE COURT:  When you speak to the court

12     you should -- it is our custom that you stand.

13          MR. RENZELLO:  Yes, sir.  Enforcing the

14     loss agreement is one thing, but since our last court

15     date back in 2007 Michael Nelson has been slandering

16     my name on the internet like you wouldn't believe.

17          THE COURT:  Right.

18          MR. RENZELLO:  It's just -- it's

19     unbelievable.  I've put together these three books.

20     One copy for yourself, one copy for Mr. Nelson, and

21     one copy that I can work from.  And if you read one

22     or two of these articles of 30 or 40 of them, you

23     would just -- you would be blown away.  I had a

24     relationship with the Boston Bruins, and within two

25     years I had donated $45,000 worth of my work products

1    in exchange for marketing efforts.

2                    One morning I got a call from Paul

3    Stewart, who was in charge of the Boston Bruins

4    Foundation, asking me who Mike Nelson was.  He's been

5    calling and threatening Charlie Jacobs all morning

6    with lawsuits because he's doing business with me.

7    That's one scenario of many scenarios.

8                    The American Inventor TV show, about

9    five years ago I had auditioned one of my products.

10   I got a call back.  They flew me to LA, and when I

11   got to the auditions the producers were asking me,

12   "Who's Mike Nelson?  He's been calling and

13   threatening us all morning."

14                   So needless to say, with my great

15   invention, when I went in front of the judges, they

16   didn't even listen to me.  They said no, no, no and

17   passed me on.  That's number two incidences where

18   he's just attacked me.  And I'm a layman.  I don't

19   know how to protect myself.  Coming to the court is

20   very -- it's just not my school.

21                   THE COURT:  Right.  Well and the

22   problem is, frankly, locating him in order to do

23   anything about it.  Even if you did locate him,

24   questionable I guess as to whether he would be --

25   whether he would comply with any orders, or if you

1       did get some sort of a judgment against him for

2       damages, whether he would not pay it, of course.

3                   MR. RENZELLO:  Well I know that --

4                   THE COURT:  (Inaudible).

5                   MR. RENZELLO:  I know I did a little

6       bit of research in my layman kind of ways.  And I

7       looked up cyber harassment, and just cyber harassment

8       alone is like $25,000 per violation and up to five

9       years in prison.  So I think that makes it criminal,

10      and I guess I would like to see maybe if the court

11      could look at it as a criminal case, and then take

12      the appropriate actions to find Mr. Nelson and let

13      him pay his consequences, for lack of better words.

14                  THE COURT:  Well, you know, I can't act

15      on my own to bring somebody in as a criminal.  There

16      has to be some prosecution brought before the court.

17      In our court it's the U.S. Attorney.  So the U.S.

18      Attorney's office in Vermont or elsewhere would have

19      to be the entity to bring any criminal charges.

20                  MR. RENZELLO:  I see.

21                  THE COURT:  Unfortunately for you.  But

22      I can't act on my own.

23                  MR. RENZELLO:  I've gotcha.

24                  THE COURT:  So, you know, I understand

25      your frustration.  The only thing that I can do, I

1    think, is to issue an order reciting the matters that

2    you've brought up here in your complaint, or not your

3    complaint, but your motion, as an example of the type

4    of behavior that is in violation of the order, and,

5    you know, issue an order saying that he has to comply

6    and has to cease from this activity.  And perhaps

7    warning him that any further activity would be

8    subject to contempt.  I can't hold him in contempt at

9    this point because there is certain procedures I have

10   to go through including having a hearing on a motion

11   for contempt.

12           Again, going through the whole process

13   of trying to notify him and get him here, and then if

14   there was a hearing held, deciding whether there was

15   any purpose in doing it.  Again, even if I were to

16   hold him in contempt, for instance, he's not here.  I

17   don't know what good that's going to do you.

18           Maybe by issuing an order that he has

19   violated it, and reciting the instances that you at

20   least enumerated in your motion, I suppose you might

21   be able to undergo the different sites that's -- he

22   is -- where he is --

23           MR. RENZELLO:  Attacking me.

24           THE COURT:  -- using, and, you know,

25   ask them.

1            MR. RENZELLO:  Slandering.

2            THE COURT:  Yeah.

3            MR. RENZELLO:  I have copies of all

4     those.

5            THE COURT:  Right.  Well I'm not sure

6     to go through every one of those, but you know,

7     you've enumerated them -- some of them anyway in your

8     motion.  I think there are six.

9            MR. RENZELLO:  Nine of those.

10            THE COURT:  Nine of them?

11            MR. RENZELLO:  And those are -- I

12    didn't want to give you a topic or -- there is many,

13    many, many more --

14            THE COURT:  Okay.

15            MR. RENZELLO:  -- than those nine.

16            THE COURT:  Those are just examples.

17            MR. RENZELLO:  Those are just examples.

18            THE COURT:  Right.

19            MR. RENZELLO:  In fact, I have one

20    example here.  And if you read just this one sheet,

21    you would understand my frustration.

22            THE COURT:  Right.  Well why don't you

23    make that an exhibit for this hearing.  Okay?

24            MR. RENZELLO:  How do I make that an

25    exhibit?

1          THE COURT:  Just give it to Kathleen,

2     and she can mark it as an exhibit.

3          THE CLERK:  (Inaudible).  Do you want

4     me to make a copy?

5          THE COURT:  So we will mark that just

6     as an exhibit.  If you have a couple others, or you

7     want to add to those that you referred to here?

8          MR. RENZELLO:  Sure.

9          UNIDENTIFIED SPEAKER:  Your Honor,

10     would you have just a second to just briefly --

11          THE COURT:  Sure.

12          UNIDENTIFIED SPEAKER:  (Inaudible).

13          THE COURT:  Sure.  These calls that

14     have been made to the different entities we talked

15     about --

16          MR. RENZELLO:  Yeah.

17          THE COURT:  -- I guess they've not been

18     able to trace the calls to figure out where he is.

19          MR. RENZELLO:  Well I'm really -- I'm

20     not like that.  I don't know who can trace the calls.

21          THE COURT:  Yeah.  So does this fellow

22     compete with you?

23          MR. RENZELLO:  I believe he does.  But

24     I can't prove it.  I believe he's still marketing

25     rinks to other companies.  But again, I don't know

1    how to find his name attached to it, because he's

2    obviously a very smart person.

3                    THE COURT:  I see.

4                    MR. RENZELLO:  Is that not

5    unbelievable, Your Honor?

6                    THE COURT:  Well obviously, yes.  It's

7    amazing to me, frankly, that people can publish this

8    sort of thing on the internet and call it to the

9    attention of people who may not know you, for

10   instance, or know anything about your business.

11                   So are you still in the same business?

12                   MR. RENZELLO:  I am.  19 years.

13   Building portable ice skating rings.

14                   THE COURT:  And how is the business

15   going?

16                   MR. RENZELLO:  Well it -- besides

17   Michael Nelson's interference, it's good.  I've lost

18   a ton of business because of him.  I've lost a lot

19   because of him, but my strength as an inventor has

20   kept me going forward.  Every once in a while I come

21   across a situation that gives me a little bit of

22   strength.  For example, Annie Leibovitz, you know,

23   the famous photographer?

24                   THE COURT:  Yes.

25                   MR. RENZELLO:  She just wrote me a very

1    nice letter, a heartfelt letter, thanking me for

2    helping her with her rink for the past seven or eight

3    years from the bottom of her heart.  Thank you, you

4    know.  And stuff like that gives me a little bit of

5    strength to keep going forward.

6          You know, Curt Schilling, from the

7    Boston Red Sox, I had sold him a Bambini and a nice

8    mower.  I didn't make too much money on it.  But

9    meeting people like that, it just kind of gives me

10   that strength to keep going forward.

11         THE COURT:  Right.

12         MR. RENZELLO:  It's been 19 years since

13   I first designed Porta-Rinx, and I've met a lot of

14   great people.  And I set up a rink in Mexico City in

15   front of City Hall in Mexico City a few years ago

16   and, you know, just met some really great people.

17         THE COURT:  Right.

18         MR. RENZELLO:  It's not about making

19   money.  It's about building a foundation for my

20   business.  And for the past 10 years it's -- I don't

21   know how many calls I got from cities and towns,

22   because they are the majority of my business, they

23   are interested in my products, and then they go

24   online and research me.  And as soon as you type in

25   Damian Renzello those slanderous comments, they come

1    up.

2              I had one of my customers call me back

3    asking me about those comments, and fortunately he

4    took the time to call me back.

5              THE COURT:  Right.

6              MR. RENZELLO:  And when I talked to

7    him, he understood, and they eventually bought a

8    rink, which is great, but that's one customer that

9    actually took the time to call.

10              THE COURT:  Right.

11              MR. RENZELLO:  I can only imagine how

12    many people have looked it up and then looked my name

13    up, and then they just wash their hands with it.

14              THE COURT:  Somehow can you alert them

15    about this guy and the fact that he's, you know,

16    slandering you and --

17              MR. RENZELLO:  I don't want to write

18    something on the internet that's going to bite me in,

19    you know, he's going to come back and say that I'm

20    writing stuff about him.

21              THE COURT:  Yeah.  Well I mean the --

22    warning them if they are -- I guess people find out

23    about your rinks from the internet?

24              MR. RENZELLO:  Yeah.  Word of mouth.

25    And -- you know, the name Porta-Rinx or my Porta-Rinx

1    ice skating rink.

2                    THE COURT:  Right.

3                    MR. RENZELLO:  If you typed in

4    Porta-Rinx, out of the top the first 10 hits, six or

5    seven of them are from Mike Nelson.

6                    THE COURT:  Really.

7                    MR. RENZELLO:  Oh, yeah.  Oh, yeah.  I

8    think number 1 is from Mike Nelson's slander.  I mean

9    it's bad.  It's bad.  That's just two copies.

10                   I've got another 15 pages here of other

11   slanderous comments.  I mean I just -- I don't know

12   what to do.

13                   THE COURT:  Well I think based upon

14   what you've told me today, and I consider it to be

15   testimony, that I could make a finding that the

16   comments that are being made on the internet are

17   slanderous and untrue.  That might be of assistance

18   in your -- again, trying to convince the --

19                   MR. RENZELLO:  People.  Customers.

20                   THE COURT:  Well the customers, but

21   also the, you know, the -- I don't know how you can

22   deal with the internet.  Whether you can bring this

23   sort of an order to Google and say, "Look this guy is

24   a --"

25                   MR. RENZELLO:  Torturing me.

1            THE COURT:  Yeah.  "And slanderous, and

2      you shouldn't be publishing stuff like that."  I

3      don't know if there is a way to do that.

4            MR. RENZELLO:  Right.  Yeah.  Imagine

5      -- (inaudible).  You have pull.  I don't have pull.

6            THE COURT:  Right.  Well --

7            MR. RENZELLO:  There must be an

8      internet police?

9            THE COURT:  Well as you say, there are

10     laws, criminal laws, that prohibit people from doing

11     certain things.  I'm not that familiar with what they

12     are.

13            MR. RENZELLO:  Yeah.

14            THE COURT:  You might -- have you tried

15     to speak to the U.S. Attorney's office, for instance?

16            MR. RENZELLO:  I have not.

17            THE COURT:  That might be something you

18     might do.  Let's get this order out, and then I would

19     suggest that you at least try it.  Go -- try the U.S.

20     Attorney's office.  Go to them and say, "Look, this

21     is my problem.  Is there any way of getting any

22     assistance from the government?"

23            MR. RENZELLO:  Sure.  Sure.  I tried

24     calling the State Police; local police.

25            THE COURT:  Right.

1          MR. RENZELLO:  But they just -- it's

2     new.  Like you said.

3          THE COURT:  (Inaudible).  I think

4     whatever it was and are with these federal laws, and

5     again, the U.S. Attorney's office would be the agency

6     that would bring the charges.

7          MR. RENZELLO:  Good information.

8          THE COURT:  All right.  Well again, I

9     am finding that Mr. Nelson has violated the agreement

10    and the order, and we will try and fashion something

11    that is appropriate for you.

12          Again, I can't include anything about

13    criminal charges.  I can't include any at this point,

14    but I don't think about contempt or damages, but you

15    know, if it were to continue, then I'll put a warning

16    in there that any potential future conduct could very

17    well result in contempt or damages.

18          MR. RENZELLO:  As far as the past ten

19    years, U.S. Attorney's office is where I want to go?

20          THE COURT:  I can't -- is there any

21    indication that he's doing it recently?

22          MR. RENZELLO:  Well I think I've got

23    dates as far back as 2014 of comments still coming on

24    the internet.

25          THE COURT:  Really?

1          MR. RENZELLO:  Since 2006, when I first

2     brought it to the court's attention, I've got dates

3     from 2006, 2007, 2008, 2009, 2010.  I make the

4     copies.  I make the copies.  I have a book -- a box

5     at my shop this wide by this wide by double deep with

6     all the paperwork from the 10 or 12 years of just

7     wasting my time and my good positive energy in

8     dealing with this mess.

9          THE COURT:  Do you have a copy of

10     something that occurred, you say, in 2014?

11          MR. RENZELLO:  I sure do.  The two

12     exhibits that I just gave you.  I think that was

13     what?  2010?

14          THE COURT:  This was 2007, and this is

15     2010.

16          MR. RENZELLO:  Your Honor, these were

17     all in 2010 as well, but I can get that paperwork for

18     you.

19          THE COURT:  Why don't you send us --

20     perhaps do it through the clerks's office, send us an

21     example of, or two, of something recent, like, 2014,

22     if you have it.

23          MR. RENZELLO:  Sure.  Most definitely.

24     Did you read that first exhibit there?

25          THE COURT:  Yes.

1          MR. RENZELLO:  Your Honor, can my

2    friend ask you a question?

3          THE COURT:  Sure.

4          MR. BOCK:  May it please the court,

5    Your Honor, for the record --

6          THE COURT:  Yeah.

7          MR. BOCK:  My name is Gordon Bock.  G-O

8    -R-D-O-N.  B-O-C-K.

9          THE COURT:  Okay.

10          MR. BOCK:  Again, I'm not an attorney.

11    It's been my privilege to know Damian for virtually

12    the entire existence of his Porta-Rinx company, some

13    close to 25 years.

14          THE COURT:  Right.

15          MR. BOCK:  And for the last decade or

16    so, as his friend, it's been my unfortunate

17    experience, at least vicariously, that, you know, see

18    and hear and really feel this intense and persistent

19    vituperation by this, if I may say, deranged

20    individual.

21          I'm wondering -- and until Mr. Renzello

22    ended up having counsel in this action for a number

23    of years, as you know --

24          THE COURT:  Yes.

25          MR. BOCK:  -- you know, I tried to help

1    him in the beginning.  And subsequently, you know,

2    since his counsel left the case, with sorting through

3    the morass of all of this, I could be -- my

4    recollection could be faulty in the extreme.

5              It seems to me, and it could be wrong,

6    that somewhere in the inception of this case, again

7    it's been close to, I think, 10 years, right?  Close

8    to 10.  9 years.  I have the impression that way back

9    in the beginning your office got some help from

10   either the Marshals or the FBI or both when Mr.

11   Nelson was, you know, even back then, very hard to

12   find.

13             And whether my recollection is accurate

14   or not, I guess I'm wondering if it's possible, you

15   know, Mr. Nelson can run, but can he hide?  If you

16   were somehow to enlist one or both of these agencies

17   that are also, like you, part of the federal

18   government, to try to find him.  Would that -- at

19   least the Marshals maybe.  Would that be appropriate

20   or inappropriate, Your Honor?

21             THE COURT:  Well I think probably what

22   you're talking about, perhaps, and I don't have any

23   memory of this, but in trying to serve him any court

24   documents may be -- and it has to be an order that

25   may be served by a Marshal.  But that's infrequent.

1    Certainly the FBI we don't -- I don't think we ever

2    got them involved.  (Inaudible).

3              MR. RENZELLO:  Back in Vermont Country

4    Store.  You had an investigation there was -- it was

5    a Vermont Country Store against Nelson.  Back in the

6    day; different case.  You had an FBI agent --

7              THE COURT:  (Inaudible)  That's

8    stretching my memory, but go ahead.

9              MR. RENZELLO:  I've actually got a copy

10   of that.  The article that was in the paper.

11             THE COURT:  Mine?

12             MR. RENZELLO:  Yeah.  You had had an

13   investigation put on him that came back that there

14   didn't appear to be a threat, and that was the end of

15   it.

16             MR. BOCK:  In the instant case is it

17   possible, forget the FBI, is it at all possible

18   somehow to involve the Marshals?  In terms of

19   actually locating this individual, this highly

20   elusive individual.

21             THE COURT:  Right.  I think the

22   Marshals would not, on their own, try to find him.

23   If you had an address for him that he could be served

24   with something, it's possible.  But they don't go

25   out, again, they get involved in criminal matters.

1       But they serve papers based upon an address or a

2       presence of a person.

3                       MR. BOCK:  Sure.  I was just thinking

4       it's easy to hide from Mr. Renzello with a lot of

5       resources, but it would be a lot harder to hide from

6       the U.S. Marshal.

7                       THE COURT:  I mean if you did find out

8       where he actually was, I think at some point --

9       wasn't he in Nevada or something?

10                      MR. RENZELLO:  Oh, yeah.  Las Vegas.

11                      MR. BOCK:  We have been serving him at

12      a P.O. Box in Rhode Island.

13                      THE COURT:  Right.

14                      MR. BOCK:  And it's not coming back.

15                      THE COURT:  Right.

16                      MR. BOCK:  So inference is if someone

17      in his family is getting this stuff, and the

18      Defendant's aware of the motions, and even the fact

19      that there was going to be this hearing today.  He's

20      well aware and maybe just chooses not to --

21                      THE COURT:  Not to come.

22                      MR. BOCK:  -- participate.  You know,

23      he will continue his nefarious deeds in the worldwide

24      web.

25                      THE COURT:  Right.

1          MR. BOCK:  Which you mentioned earlier,

2     what's that?  Was it Twain?  You know, a lie can get

3     its way around the world while the truth is putting

4     on his pants?  Am I getting that quote correct; Your

5     Honor?  I think it was Twain.

6          THE COURT:  Maybe.

7          MR. BOCK:  And you take the internet,

8     it's exponential.  But you ask Mr. Renzello in terms

9     of how he could possibly put a disclaimer or try to

10     be out there preventing it, I believe it's virtually

11     -- I believe it's virtually impossible.  When you

12     have someone who is as slick and savvy as the non-

13     participating Defendant, on matters pertaining to the

14     internet, I think you could forget about it, you

15     know.  He knows how to --  there is a way he can

16     optimize, as he said, optimize these search engines

17     so that you can put your (inaudible) stuff right at

18     the top the way Mr. Renzello told you is happening,

19     and there is virtually nothing -- just asked Senator

20     Santorum, if you're familiar with that whole thing.

21     Former Senator Santorum, if you do a Google search of

22     his name, you get something extremely disgusting. And

23     he's been in -- since he first ran for president,

24     he's been unable to do a thing about that.

25          THE COURT:  Right.

1          MR. BOCK: So I don't know if Mr.

2    Renzello or we can do much of anything to come back

3    to these screeds that the Defendant puts out there.

4    But again, as someone who has known Damian for, you

5    know, close to a quarter of a century, and has seen

6    him suffer through this for about a decade or so, it

7    just seems that something has to be done, you know,

8    you talk about an order, and that's a great thing.

9          THE COURT: Right.

10         MR. BOCK: Of course, enforcing it is a

11    different thing.

12         THE COURT: Right.

13         MR. BOCK: Finding in the first place

14    and enforcing it is a different thing. So that's

15    just my 10 cents.

16         THE COURT: You know, I agree. And I

17    don't know, frankly, what else to do except I can

18    suggest that maybe he try the U.S. Attorney's office,

19    see if they have any interest. Again, I don't know.

20    It seems to me there is some violation of criminal

21    law. But again, I'm not a person who makes that

22    determination.

23         MR. RENZELLO: Your Honor, can I give

24    you another exhibit?

25         THE COURT: Yeah. Sure. (Inaudible).

1    Right.

2                    MR. RENZELLO: And shortly after

3    running the store, Mr. Nelson went on to the internet

4    blog with Popular Science and (inaudible).

5                    THE COURT: Right.

6                    MR. RENZELLO: Another example

7    (inaudible).

8                    THE COURT: Example. Right. Okay.

9    Well, as I say, we will do as much as I can. And,

10   you know, if you ever find him, serve this order on

11   him, have it served on him. Any process server can

12   do it. It doesn't have to be a Marshal or anybody

13   else.

14                   And then if he continues to do it then

15   certainly --

16                   MR. RENZELLO: I'm afraid if I look for

17   him, then he's going to say that I'm stalking him.

18                   THE COURT: Right.

19                   MR. RENZELLO: I'm afraid to even type

20   his name into my phone to research other court cases

21   on him. Because for the fear of, you know --

22                   THE COURT: Right.

23                   MR. RENZELLO: I mean it's --

24                   THE COURT: Well that's up to you, I

25   guess.

1          MR. RENZELLO:  Well I think I'm -- I

2     think you've got all the information that you need

3     for now, and I think the U.S. Attorney's office is

4     probably the next step.

5          THE COURT:  Give them a try.

6          MR. BOCK:  Your Honor, one last thing.

7          THE COURT:  Yes.

8          MR. BOCK:  Because of the five-part

9     motion that is to be precipitated this year.

10          THE COURT:  Yes.

11          MR. BOCK:  A through E; right?  I just

12     wanted to ask you about E.  Which is that now that I

13     put myself out here, in public --

14          THE COURT:  Are you sure you want to be

15     mentioned?

16          MR. BOCK:  Well, first of all, if the

17     Defendant orders a transcript, I'm already mentioned;

18     right?  Today's hearing; right?  I'm out here.

19          THE COURT:  If anybody wants it.

20          MR. BOCK: I'm more concerned about my

21     wife and my three young daughters.  Me, I can handle

22     plenty.  But I see the stuff of which the absent

23     Defendant is capable, and just from the standpoint of

24     my wife and three daughters, it makes me uneasy.

25          You know, I don't mind claiming to the

1    world that I'm this man's friend, and that I think

2    he's been wronged in the extreme, and that actually

3    the Defendant should be punished in every way

4    possible.  But, you know, it's within the realm of

5    the court.

6              Having said that, I'm wondering if Your

7    Honor would put the umbrella, as it were, of, you

8    know, of the no contact that -- I believe that's --

9    that's the other thing in terms of -- Damian, wasn't

10   there some --

11             MR. RENZELLO:  Last I checked.

12             MR. BOCK:  Were the parties still not

13   supposed to have direct contact last I knew or is

14   that --

15             THE COURT:  Yeah, I think --

16   (inaudible).

17             MR. BOCK:  I would want to reinforce

18   that in terms of, you know, Mr. Renzello and Mr.

19   Nelson.  Either way, if Your Honor could consider

20   opening the umbrella a little bit more and sticking

21   me and my family under there, I would be deeply

22   appreciative because I want to be able to be

23   supportive and do the right thing and try to help

24   Damian in any way I can.  I'm a little concerned

25   about somebody -- compost hitting the ventilating

1  equipment in my direction, if you will, because this

2  guy does generate a lot of compost.

3            THE COURT:  I don't think he knows

4  about you yet.  Does he?

5            MR. BOCK:  He will now.

6            THE COURT:  Well I mean this is -- it's

7  a recorded hearing but it's only --

8            MR. BOCK:  I don't think he has, you

9  know, until my addressing you today.  He's pretty

10  savvy.  I'm pretty sure he didn't come today.  He'll

11  probably get a transcript.  So here I am.

12            Again, I'm good with that, but more

13  from the standpoint for my wife and my three young

14  daughters.  I just would like it to be clear -- and

15  again, we also know that this absent Defendant flouts

16  (inaudible) flouts orders, flouts confession, flouts

17  all kinds of things, but at least if it's on paper,

18  if Your Honor would consider that, that the same

19  protections being currently offered to the Plaintiff

20  extend over to me and my immediate family, I would be

21  most grateful.

22            THE COURT:  Well again, I'm not sure

23  you want that to happen.  (Inaudible) an order that

24  mentions your name.  That (inaudible) is defined.

25  Transcript, he has to order it through the clerk's

1    office.

2              MR. BOCK:  Right.

3              THE COURT:  And have to pay for it to

4    have it printed and so forth.  So I don't think he's

5    going to go that far.

6              MR. BOCK:  Okay.  So you'd rather just

7    --

8              THE COURT:  If there is any evidence,

9    you know, in the future that he's retaliating somehow

10   against you, I would certainly reconsider that.

11             MR. BOCK:  You want to hear about it.

12             THE COURT:  Yeah.  I don't think at

13   this point you would, frankly, want to have it --

14             MR. BOCK:  I see your point.  Thank

15   you, Your Honor.

16             THE COURT:  Okay.  So we will, in due

17   course, we will issue an order, and then, as I say,

18   you might want to (inaudible) for the U.S. Attorney's

19   office to see if they will help you out.

20             MR. RENZELLO:  Thank you, Your Honor.

21   I appreciate your time.

22             THE COURT:  Thank you.

23             THE CLERK:  All rise.

24             (End of recorded proceeding).

25

1                    C E R T I F I C A T E

2

3          I, Kim U. Sears, do hereby certify that

4      I transcribed the hearing from an audio

5      recording taken on 5/7/2015.

6          I further certify that I am not related

7      to any of the parties thereto or their

8      counsel, and I am in no way interested in the

9      outcome of said cause.

10         Dated at Williston, Vermont, this 8th

11     day of March, 2021.

12                              _____

13                              Kim U. Sears, RPR

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$25,000** - 5:8
**$45,000** - 3:25

**0**

**05402-0329** - 1:23

**1**

**1** - 12:8
**10 [6]** 10:20, 12:4, 15:6, 17:7, 17:8, 21:15
**12** - 15:6
**15** - 12:10
**16** - 2:18
**19 [2]** 9:12, 10:12
**1:05-cv-00153-jg** - 1:5

**2**

**2006 [2]** 15:1, 15:3
**2007 [4]** 2:18, 3:15, 15:3, 15:14
**2008** - 15:3
**2009** - 15:3
**2010 [4]** 15:3, 15:13, 15:15, 15:17
**2014 [3]** 14:23, 15:10, 15:21
**2015** - 1:9
**2021** - 27:11
**25** - 16:13

**3**

**30** - 3:22
**329** - 1:22

**4**

**40** - 3:22

**5**

**5-cv-153** - 2:2
**5/7/2015** - 27:5

**7**

**7** - 1:9

**8**

**802/800** - 1:23
**863-6067** - 1:23
**8th** - 27:10

**9**

**9** - 17:8

**A**

**able [3]** 6:21, 8:18, 24:22
**absent [2]** 23:22, 25:15
**accurate** - 17:13
**across** - 9:21
**act [2]** 5:14, 5:22
**action** - 16:22
**actions** - 5:12
**activity [2]** 6:6, 6:7
**add** - 8:7
**added** - 2:18
**address [3]** 2:24, 18:23, 19:1
**addressing** - 25:9
**advisor** - 3:9
**afraid [2]** 22:16, 22:19
**against [3]** 5:1, 18:5, 26:10
**agencies** - 17:16
**agency** - 14:5
**agent** - 18:6
**agree** - 21:16
**agreement [5]** 2:7, 2:17, 3:7, 3:14, 14:9
**ahead [2]** 3:6, 18:8
**alert** - 11:14
**alone** - 5:8
**already** - 23:17
**amazing** - 9:7
**American** - 4:8
**Annie** - 9:22
**announced** - 2:16
**anyway** - 7:7
**appear [2]** 2:5, 18:14
**appeared [2]** 2:21, 3:5
**appreciate** - 26:21
**appreciative** - 24:22
**appropriate [3]** 5:12, 14:11, 17:19
**article** - 18:10
**articles** - 3:22
**asking [3]** 4:4, 4:11, 11:3
**assistance [3]** 2:14, 12:17, 13:22
**attached** - 9:1
**attacked** - 4:18
**Attacking** - 6:23
**attention [2]** 9:9, 15:2
**attorney [2]** 5:17, 16:10
**Attorney's [8]** 5:18, 13:15, 13:20, 14:5, 14:19, 21:18, 23:3, 26:18
**audio [2]** 1:9, 27:4
**auditioned** - 4:9
**auditions** - 4:11

**B**

**B-O-C-K** - 16:8
**bad [2]** 12:9, 12:9
**Bambini** - 10:7
**beginning [2]** 17:1, 17:9
**behavior** - 6:4
**besides** - 9:16
**better** - 5:13
**bit [4]** 5:6, 9:21, 10:4, 24:20
**bite** - 11:18
**blog** - 22:4
**blown** - 3:23
**Bock [31]** 1:13, 16:4, 16:7, 16:7, 16:10, 16:15, 16:25, 18:16, 19:3, 19:11, 19:14, 19:16, 19:22, 20:1, 20:7, 21:1, 21:10, 21:13, 23:6, 23:8, 23:11, 23:16, 23:20, 24:12, 24:17, 25:5, 25:8, 26:2, 26:6, 26:11, 26:14
**book** - 15:4
**books** - 3:19
**Boston [3]** 3:24, 4:3, 10:7
**bottom** - 10:3
**box [3]** 1:22, 15:4, 19:12
**briefly** - 8:10
**bring [4]** 5:15, 5:19, 12:22, 14:6
**brought [3]** 5:16, 6:2, 15:2
**Bruins [2]** 3:24, 4:3
**building [2]** 9:13, 10:19
**BURLINGTON** - 1:23

**C**

**calling [3]** 4:5, 4:12, 13:24
**can't [7]** 5:14, 5:22, 6:8, 8:24, 14:12, 14:13, 14:20
**capable** - 23:23
**CAPITOL** - 1:22
**case [7]** 1:5, 2:15, 5:11, 17:2, 17:6, 18:6, 18:16
**cases** - 22:20
**cause** - 27:9
**cease** - 6:6
**cents** - 21:15
**century** - 21:5
**certain [2]** 6:9, 13:11
**certainly [3]** 18:1, 22:15, 26:10
**certify [2]** 27:3, 27:6
**charge** - 4:3
**charges [3]** 5:19, 14:6, 14:13
**Charlie** - 4:5
**checked** - 24:11
**chooses** - 19:20
**cities** - 10:21
**City [3]** 10:14, 10:15, 10:15
**claiming** - 23:25
**clear** - 25:14
**Clerk [4]** 1:15, 2:1, 8:3, 26:23
**clerk's** - 25:25
**clerks's** - 15:20
**close [4]** 16:13, 17:7, 17:7, 21:5
**coming [2]** 4:19, 14:23, 19:14
**comments [5]** 10:25, 11:3, 12:11, 12:16, 14:23
**companies** - 8:25
**company** - 16:12
**compete** - 8:22
**complaint [2]** 6:2, 6:3
**comply [2]** 4:25, 6:5
**compost [2]** 24:25, 25:2
**concerned [2]** 23:20, 24:24
**conduct** - 14:16
**confession** - 25:16
**consent** - 2:7
**consequences** - 5:13
**consider [3]** 12:14, 24:19, 25:18
**contact [2]** 24:8, 24:13
**contempt [6]** 6:8, 6:8, 6:11, 6:16, 14:14, 14:17
**continue [2]** 14:15, 19:23
**continues** - 22:14
**convince** - 12:18
**copies [4]** 7:3, 12:9, 15:4, 15:4
**correct [3]** 3:1, 3:3, 20:4
**counsel [3]** 16:22, 17:2, 27:8
**couple** - 8:6
**course [3]** 5:2, 17:6, 18:6, 18:16

**cases** - 22:20
**cause** - 27:9
**cease** - 6:6
**cents** - 21:15
**century** - 21:5
**certain [2]** 6:9, 13:11
**certainly [3]** 18:1, 22:15, 26:10
**certify [2]** 27:3, 27:6
**charge** - 4:3
**charges [3]** 5:19, 14:6, 14:13
**Charlie** - 4:5
**checked** - 24:11
**chooses** - 19:20
**cities** - 10:21
**City [3]** 10:14, 10:15, 10:15
**claiming** - 23:25
**clear** - 25:14
**Clerk [4]** 1:15, 2:1, 8:3, 26:23
**clerk's** - 25:25
**clerks's** - 15:20
**close [4]** 16:13, 17:7, 17:7, 21:5
**coming [2]** 4:19, 14:23, 19:14
**comments [5]** 10:25, 11:3, 12:11, 12:16, 14:23
**companies** - 8:25
**company** - 16:12
**compete** - 8:22
**complaint [2]** 6:2, 6:3
**comply [2]** 4:25, 6:5
**compost [2]** 24:25, 25:2
**concerned [2]** 23:20, 24:24
**conduct** - 14:16
**confession** - 25:16
**consent** - 2:7
**consequences** - 5:13
**consider [3]** 12:14, 24:19, 25:18
**contact [2]** 24:8, 24:13
**contempt [6]** 6:8, 6:8, 6:11, 6:16, 14:14, 14:17
**continue [2]** 14:15, 19:23
**continues** - 22:14
**convince** - 12:18
**copies [4]** 7:3, 12:9, 15:4, 15:4
**correct [3]** 3:1, 3:3, 20:4
**counsel [3]** 16:22, 17:2, 27:8
**couple** - 8:6
**course [3]** 5:2,

**court [110]** 1:1, 1:22, 2:6, 2:9, 2:11, 2:14, 2:16, 2:18, 2:18, 3:3, 3:4, 3:5, 3:11, 3:11, 3:14, 3:17, 4:19, 4:21, 5:4, 5:10, 5:14, 5:16, 5:17, 5:21, 5:24, 6:24, 7:2, 7:5, 7:10, 7:14, 7:16, 7:18, 7:22, 8:1, 8:5, 8:11, 8:13, 8:17, 8:21, 9:3, 9:6, 9:14, 9:24, 10:11, 10:17, 11:5, 11:10, 11:14, 11:21, 12:2, 12:6, 12:13, 12:20, 13:1, 13:6, 13:9, 13:14, 13:17, 13:25, 14:3, 14:8, 14:20, 14:25, 15:9, 15:14, 15:19, 15:25, 16:3, 16:4, 16:6, 16:9, 16:14, 16:24, 17:21, 17:23, 18:7, 18:11, 18:21, 19:7, 19:13, 19:15, 19:21, 19:25, 20:6, 20:25, 21:9, 21:12, 21:16, 21:25, 22:5, 22:8, 22:18, 22:20, 22:22, 22:24, 23:5, 23:7, 23:10, 23:14, 23:19, 24:5, 24:15, 25:3, 25:6, 25:22, 26:3, 26:8, 26:12, 26:16, 26:22
**court's** - 15:2
**courtroom** - 2:4
**criminal [8]** 5:9, 5:11, 5:15, 5:19, 13:10, 14:13, 18:25, 21:20
**currently** - 25:19
**Curt** - 10:6
**custom** - 3:12
**customer** - 11:8
**customers [3]** 11:2, 12:19, 12:20
**cyber [2]** 5:7, 5:7

**D**

**damages [3]** 5:2, 14:14, 14:17
**Damian [8]** 1:4, 1:13, 2:22, 10:25, 16:11, 21:4, 24:9, 24:24
**date** - 3:15
**Dated** - 27:10
**dates [2]** 14:23, 15:2
**daughters [3]** 23:21, 23:24, 25:14
**deal** - 12:22
**dealing** - 15:8
**decade [2]** 16:15, 21:6
**deciding** - 6:14
**deeds** - 19:23
**deep** - 15:5
**deeply** - 24:21
**Defendant [7]** 2:4, 20:13, 21:3, 23:17, 23:23, 24:3, 25:15
**Defendant's** - 19:18
**defined** - 25:24
**definitely** - 15:23
**deranged** - 16:19
**designed** - 10:13
**determination** - 21:22
**determine** - 2:22
**difficult** - 2:21
**direct** - 24:13
**direction** - 25:1
**disclaimer** - 20:9
**disgusting** - 20:22
**DISTRICT [2]** 1:1, 1:2
**Docket** - 2:2
**documents** - 17:24
**donated** - 3:25
**double** - 15:5
**due** - 26:16

**E**

**E-MAIL** - 1:24
**earlier** - 20:1
**easy** - 19:4
**efforts** - 4:7
**eight** - 10:2
**either [2]** 17:10, 24:19
**elsewhere** - 5:18
**elusive** - 18:20
**ended** - 16:22
**energy** - 15:7
**enforce** - 2:17
**enforcement** - 2:7
**enforcing [4]** 3:6, 3:13, 21:10, 21:14
**engines** - 20:16
**enlist** - 17:16
**entire** - 16:12
**entities** - 8:14
**entity** - 5:19
**enumerated [2]** 6:20, 7:7
**equipment** - 25:1
**eventually** - 11:7
**evidence** - 26:8
**example [6]** 6:3, 7:20, 9:22,

15:21, 22:6, 22:8
**examples [2]** 7:16, 7:17
**except** - 21:17
**exchange** - 4:1
**exhibit [6]** 7:23, 7:25, 8:2, 8:6, 15:24, 21:24
**exhibits** - 15:12
**existence** - 16:12
**experience** - 16:17
**exponential** - 20:8
**extend** - 25:20
**extreme [2]** 17:4, 24:2
**extremely** - 20:22

**F**

**familiar [2]** 13:11, 20:20
**family [3]** 19:17, 24:21, 25:20
**famous** - 9:23
**fashion** - 14:10
**faulty** - 17:4
**FBI [4]** 17:10, 18:1, 18:6, 18:17
**fear** - 22:21
**federal [2]** 14:4, 17:17
**feel** - 16:18
**fellow** - 8:21
**figure** - 8:18
**finding [3]** 12:15, 14:9, 21:13
**five [2]** 4:9, 5:8
**five-part** - 23:8
**flew** - 4:10
**flouts [4]** 25:15, 25:16, 25:16, 25:16
**forget [2]** 18:17, 20:14
**Former** - 20:21
**forth** - 26:4
**fortunately** - 11:3
**forward [3]** 9:20, 10:5, 10:10
**foundation [2]** 4:4, 10:19
**frankly [4]** 4:22, 9:7, 21:17, 26:13
**front [2]** 4:15, 10:15
**frustration [2]** 5:25, 7:21
**future [2]** 14:16, 26:9

**G**

**G-O** - 16:7
**Garvan** - 1:8
**gave** - 15:12
**generate** - 25:2
**gentleman** - 2:12

**gives [3]** 9:21, 10:4, 10:9
**Google [2]** 12:23, 20:21
**Gordon [3]** 1:13, 2:13, 16:7
**gotcha** - 5:23
**government [2]** 13:22, 17:18
**grateful** - 25:21
**guess [6]** 4:24, 5:10, 8:17, 11:22, 17:14, 22:25

**H**

**Hall** - 10:15
**handle** - 23:21
**hands** - 11:13
**happen** - 25:23
**happening** - 20:18
**harassment [2]** 5:7, 5:7
**harder** - 19:5
**having [3]** 6:10, 16:22, 24:6
**He'll** - 25:10
**he's [18]** 4:4, 4:6, 4:12, 4:18, 6:16, 8:24, 9:1, 11:15, 11:19, 14:21, 19:19, 20:23, 20:24, 22:17, 24:2, 25:9, 26:4, 26:9
**hear [4]** 3:8, 3:8, 16:18, 26:11
**hearing [11]** 1:8, 2:7, 2:17, 3:4, 6:10, 6:14, 7:23, 19:19, 23:18, 25:7, 27:4
**heart** - 10:3
**heartfelt** - 10:1
**held [3]** 1:8, 1:9, 6:14
**helping [2]** 2:14, 10:2
**hereby** - 27:3
**hide [3]** 17:15, 19:4, 19:5
**highly** - 18:19
**hits** - 12:4
**hitting** - 24:25
**hold [2]** 6:8, 6:16
**Honor [16]** 2:10, 3:2, 8:9, 9:5, 15:16, 16:1, 16:5, 17:20, 20:5, 21:23, 23:6, 24:7, 24:19, 25:18, 26:15, 26:20
**Honorable** - 1:8

**I**

**ice [2]** 9:13, 12:1
**imagine [2]** 11:11, 13:4

**immediate** - 25:20
**impossible** - 20:11
**impression** - 17:8
**inappropriate** - 17:20
**inaudible [17]** 2:8, 5:4, 8:3, 8:12, 13:5, 14:3, 18:2, 18:7, 20:17, 21:25, 22:4, 22:7, 24:16, 25:16, 25:23, 25:24, 26:18
**inception** - 17:6
**incidences** - 4:17
**include [2]** 14:12, 14:13
**including** - 6:10
**indication** - 14:21
**individual [3]** 16:20, 18:19, 18:20
**inference** - 19:16
**info@capitolcour -** 1:24
**information [2]** 14:7, 23:2
**infrequent** - 17:25
**instance [3]** 6:16, 9:10, 13:15
**instances** - 6:19
**instant** - 18:16
**intense** - 16:18
**interest** - 21:19
**interested [2]** 10:23, 27:8
**interference -** 9:17
**internet [11]** 3:16, 9:8, 11:18, 11:23, 12:16, 12:22, 13:8, 14:24, 20:7, 20:14, 22:3
**invention** - 4:15
**inventor [2]** 4:8, 9:19
**investigation [2]** 18:4, 18:13
**involve** - 18:18
**involved [2]** 18:2, 18:25
**Island** - 19:12
**issue [3]** 6:1, 6:5, 26:17
**issuing** - 6:18

**J**

**Jacobs** - 4:5
**judges** - 4:15
**judgment** - 5:1

**K**

**Kathleen [2]** 1:15, 8:1
**kept** - 9:20
**Kim [2]** 27:3, 27:13
**kinds** - 25:17

**known [2]** 2:24, 21:4
**knows [2]** 20:15, 25:3
**Korstange** - 1:15

**L**

**LA** - 4:10
**lack** - 5:13
**Las** - 19:10
**law** - 21:21
**laws [3]** 13:10, 13:10, 14:4
**lawsuits** - 4:6
**layman [2]** 4:18, 5:6
**least [5]** 6:20, 13:19, 16:17, 17:19, 25:17
**Leibovitz** - 9:22
**Let's** - 13:18
**letter [3]** 2:24, 10:1, 10:1
**lie** - 20:2
**listen** - 4:16
**local** - 13:24
**locate** - 4:23
**locating [2]** 4:22, 18:19
**loss** - 3:14
**lost [2]** 9:17, 9:18

**M**

**mailed** - 2:23
**majority** - 10:22
**makes [3]** 5:9, 21:21, 23:24
**making** - 10:18
**man's** - 24:1
**March** - 27:11
**mark [2]** 8:2, 8:5
**marketing [2]** 4:1, 8:24
**Marshal [3]** 17:25, 19:6, 22:12
**Marshals [4]** 17:10, 17:19, 18:18, 18:22
**matter** - 2:6
**matters [3]** 6:1, 18:25, 20:13
**maybe [6]** 5:10, 6:18, 17:19, 19:20, 20:6, 21:18
**meeting** - 10:9
**memory [2]** 17:23, 18:8
**mentioned [3]** 20:1, 23:15, 23:17
**mentions** - 25:24
**mess** - 15:8
**met [2]** 10:13, 10:16
**Mexico [2]** 10:14, 10:15

**Michael [4]** 1:5, 2:3, 3:15, 9:17
**Mike [4]** 4:4, 4:12, 12:5, 12:8
**mind** - 23:25
**Mine** - 18:11
**money [2]** 10:8, 10:19
**morass** - 17:3
**morning [3]** 4:2, 4:5, 4:13
**motion [5]** 6:3, 6:10, 6:20, 7:8, 23:9
**motions** - 19:18
**mouth** - 11:24
**mower** - 10:8
**Murtha** - 1:8
**myself [2]** 4:19, 23:13

**N**

**needless** - 4:14
**nefarious** - 19:23
**Nelson [16]** 1:5, 2:3, 2:20, 3:5, 3:15, 3:20, 4:4, 4:12, 5:12, 12:5, 14:9, 17:11, 17:15, 18:5, 22:3, 24:19
**Nelson's [2]** 9:17, 12:8
**Nevada** - 19:9
**nice [2]** 10:1, 10:7
**nine [3]** 7:9, 7:10, 7:15
**non** - 20:12
**nothing** - 20:19
**notice** - 2:24
**notify [2]** 2:20, 6:13

**O**

**obviously [4]** 2:21, 3:4, 9:2, 9:6
**occurred** - 15:10
**offered** - 25:19
**office [11]** 5:18, 13:15, 13:20, 14:5, 14:19, 15:20, 17:9, 21:18, 23:3, 26:1, 26:19
**online** - 10:24
**opening** - 24:20
**optimize [2]** 20:16, 20:16
**order [17]** 2:18, 2:19, 3:6, 4:22, 6:1, 6:4, 6:5, 6:18, 12:23, 13:18, 14:10, 17:24, 21:8, 22:10, 25:23, 25:25, 26:17
**orders [3]** 4:25,

23:17, 25:16
**others** - 8:6
**outcome** - 27:9

**P**

**P.O [2]** 1:22, 19:12
**pages** - 12:10
**pants** - 20:4
**papers** - 19:1
**paperwork [2]** 15:6, 15:17
**participate** - 19:22
**participating -** 20:13
**parties [2]** 24:12, 27:7
**passed** - 4:17
**past [3]** 10:2, 10:20, 14:18
**Paul** - 4:2
**pay [3]** 5:2, 5:13, 26:3
**per** - 5:8
**perhaps [3]** 6:6, 15:20, 17:22
**persistent** - 16:18
**pertaining** - 20:13
**photographer -** 9:23
**Plaintiff [2]** 2:3, 25:19
**please [2]** 2:1, 16:4
**plenty** - 23:22
**point [5]** 6:9, 14:13, 19:8, 26:13, 26:14
**police [3]** 13:8, 13:24, 13:24
**Popular** - 22:4
**Porta-rinx [5]** 10:13, 11:25, 11:25, 12:4, 16:12
**portable** - 9:13
**positive** - 15:7
**possible [5]** 17:14, 18:17, 18:17, 18:24, 24:4
**possibly** - 20:9
**potential** - 14:16
**precipitated** - 23:9
**prepared** - 3:6
**presence** - 19:2
**present** - 2:4
**president** - 20:23
**preventing** - 20:10
**previous** - 2:19
**printed** - 26:4
**prison** - 5:9
**privilege** - 16:11
**pro** - 2:4
**probably [3]** 17:21, 23:4, 25:11
**problem [2]** 4:22, 13:21
**procedures** - 6:9

proceeding - 26:24
process [2] 6:12, 22:11
producers - 4:11
products [3] 3:25, 4:9, 10:23
prohibit - 13:10
prosecution - 5:16
protect - 4:19
protections - 25:19
prove - 8:24
public - 23:13
publish - 9:7
publishing - 13:2
pull [2] 13:5, 13:5
punished - 24:3
purpose - 6:15
puts - 21:3
putting - 20:3

**Q**

quarter - 21:5
questionable - 4:24
quote - 20:4

**R**

R-D-O-N - 16:8
ran - 20:23
rather - 26:6
really [5] 8:19, 10:16, 12:6, 14:25, 16:18
realm - 24:4
recent - 15:21
recently - 14:21
reciting [2] 6:1, 6:19
recollection [2] 17:4, 17:13
reconsider - 26:10
record - 16:5
recorded [2] 25:7, 26:24
recording [2] 1:9, 27:5
Red - 10:7
referred - 8:7
reinforce - 24:17
related - 27:6
relationship - 3:24
Renzello [76] 1:4, 1:13, 2:3, 2:10, 2:11, 2:13, 2:19, 3:1, 3:10, 3:13, 3:18, 5:3, 5:5, 5:20, 5:23, 6:23, 7:1, 7:3, 7:9, 7:11, 7:15, 7:17, 7:19, 7:24, 8:8, 8:16, 8:19, 8:23, 9:4, 9:12, 9:16, 9:25, 10:12, 10:18, 10:25, 11:6, 11:11, 11:17, 11:24,

12:3, 12:7, 12:19, 12:25, 13:4, 13:7, 13:13, 13:16, 13:23, 14:1, 14:7, 14:18, 14:22, 15:1, 15:11, 15:16, 15:23, 16:1, 16:21, 18:3, 18:9, 18:12, 19:4, 19:10, 20:8, 20:18, 21:2, 21:23, 22:2, 22:6, 22:16, 22:19, 22:23, 23:1, 24:11, 24:18, 26:20
REPORTERS - 1:22
requested - 2:14
required - 2:19
research [3] 5:6, 10:24, 22:20
resources - 19:5
result - 14:17
retaliating - 26:9
returned - 2:25
Rhode - 19:12
rings - 9:13
rink [4] 10:2, 10:14, 11:8, 12:1
rinks [2] 8:25, 11:23
rise [2] 2:1, 26:23
RPR - 27:13
run - 17:15
running - 22:3

**S**

Santorum [2] 20:20, 20:21
savvy [2] 20:12, 25:10
saying - 6:5
scenario - 4:7
scenarios - 4:7
Schilling - 10:6
Science - 22:4
screeds - 21:3
se - 2:4
search [2] 20:16, 20:21
Sears [2] 27:3, 27:13
seated - 2:2
seems [3] 17:5, 21:7, 21:20
Senator [2] 20:19, 20:21
send [2] 15:19, 15:20
serve [3] 17:23, 19:1, 22:10
served [3] 17:25, 18:23, 22:11
server - 22:11
serving - 19:11

seven [2] 10:2, 12:5
sheet - 7:20
shop - 15:5
shortly - 22:2
shouldn't - 13:2
sites - 6:21
situation - 9:21
six [2] 7:8, 12:4
skating [2] 9:13, 12:1
slander - 12:8
slandering [3] 3:15, 7:1, 11:16
slanderous [4] 10:25, 12:11, 12:17, 13:1
slick - 20:12
smart - 7:12
somebody [2] 5:15, 24:25
somehow [5] 2:20, 11:14, 17:16, 18:18, 26:9
someone [3] 19:16, 20:12, 21:4
somewhere - 17:6
sort [3] 5:1, 9:8, 12:23
sorting - 17:2
Sox - 17:12
speak [2] 3:11, 13:15
SPEAKER [2] 8:9, 8:12
stalking - 22:17
stand - 3:12
standpoint [2] 23:23, 25:13
State - 13:24
step - 23:4
Stewart - 4:3
sticking - 24:20
store [3] 18:4, 18:5, 22:3
strength [4] 9:19, 9:22, 10:5, 10:10
stretching - 18:8
stuff [6] 10:4, 11:20, 13:2, 19:17, 20:17, 23:22
subject - 6:8
subsequently - 17:1
suffer - 21:6
suggest [2] 13:19, 21:18
supportive - 24:23
suppose - 6:20
supposed - 24:13

**T**

taken - 27:5
ten - 14:18
terms [4] 18:18, 20:8, 24:9, 24:18

testimony - 12:15
Thank [4] 10:3, 26:14, 26:20, 26:22
thanking - 10:1
thereto - 27:7
they've - 8:17
thing [11] 3:14, 5:25, 9:8, 20:20, 20:24, 21:8, 21:11, 21:14, 23:6, 24:9, 24:23
thinking - 19:3
threat - 18:14
threatening [2] 4:5, 4:13
today [4] 12:14, 19:19, 25:9, 25:10
Today's - 23:18
ton - 9:18
top [2] 12:4, 20:18
topic - 7:12
Torturing - 12:25
towns - 10:21
trace [2] 8:18, 8:20
transcribed [2] 1:9, 27:4
transcript [3] 23:17, 25:11, 25:25
tried [3] 13:14, 13:23, 16:25
truth - 20:3
TV - 4:8
Twain [2] 20:2, 20:5
type [3] 6:3, 10:24, 22:19
typed - 12:3

**U**

U.S [11] 1:1, 5:17, 5:17, 13:15, 13:19, 14:5, 14:19, 19:6, 21:18, 23:3, 26:18
Uh - 3:10
umbrella [2] 24:7, 24:20
unable - 20:24
unbelievable [2] 3:19, 9:5
undergo - 6:21
understand [3] 2:23, 5:24, 7:21
understood - 11:7
uneasy - 23:24
unfortunate - 16:16
Unfortunately - 5:21
UNIDENTIFIED [2] 8:9, 8:12
untrue - 12:17
upon [2] 12:13, 19:1

using - 6:24

**V**

Vegas - 19:10
ventilating - 24:25
Vermont [6] 1:2, 1:23, 5:18, 18:3, 18:5, 27:10
versus - 2:3
vicariously - 16:17
violated [2] 6:19, 14:9
violation [3] 5:8, 6:4, 21:20
virtually [4] 16:11, 20:10, 20:11, 20:19
vituperation - 16:19

**W**

wanted - 23:12
wants - 23:19
warning [3] 6:7, 11:22, 14:15
wash - 11:13
wasting - 15:7
ways - 5:6
web - 19:24
what's - 20:2
whatever - 14:4
whether [6] 4:24, 4:25, 5:2, 6:14, 12:22, 17:13
Who's - 4:12
whole [6] 6:12, 20:20
wide [2] 15:5, 15:5
wife [3] 23:21, 23:24, 25:13
Williston - 27:10
wish - 3:9
within [2] 3:24, 24:4
wondering [3] 16:21, 17:14, 24:6
worldwide - 19:23
worth - 3:25
wouldn't - 3:16
writing - 11:20
wrong - 17:5
wronged - 24:2
wrote - 9:25

**Y**

yeah [16] 7:2, 8:16, 8:21, 11:21, 11:24, 12:7, 12:7, 13:1, 13:4, 13:13, 16:6, 18:12, 19:10, 21:25, 24:15, 26:12
yet - 25:4
you'd - 26:6
young [2] 23:21,

25:13
yourself - 3:20